The Scofield Rolling Mill Company *et al. vs.* The State of Georgia.

reporter's statement of the facts, will be understood without further elaboration.

Judgment affirmed.

THE SCOFIELD ROLLING MILL COMPANY *et al.*, plaintiffs in error, *vs.* THE STATE OF GEORGIA, defendant in error.

(BLECKLEY, Judge, having been of counsel, did not preside in this case.) ·

1. An aggregate corporation can only act through and by agents. It deals with the world through its agents; it can deal in no other way.

2. Such a corporation can commit, and does commit frauds; if so, it commits the frauds through the agents, for it can commit it in no other way.

3. It is, therefore, bound by the fraudulent conduct of its agents, engaged in its business and on that line of the business where it puts such agent to work. All deceit, misrepresentation, falsehood, in the course o: that business, whereby anybody is cheated, the corporation is responsible for.

4. If such fraudulent conduct passes the verge of a civil wrong and becomes a public crime, is the corporation responsible, and in what cases, under what circumstances, and to what extent? *Quære !*

5. The state, so far as her interest in the Western and Atlantic Railroad is concerned, acts through agents, and notice of fraud to her agent in the line of his business, is notice to the state; and collusion of its agent with another's agent, both principals being otherwise innocent, would bar the state's right to recover, if her agent was dealing with the other's agent within the scope of his authority.

6. If the treasurer of the state road, who paid money to the treasurer of the Rolling Mill Company, colluded with him or had knowledge of his fraud, the state would be estopped; *aliter* if any other subordinate agent so had knowledge and colluded.

7. When a witness of the plaintiff testifies from recollection to a matter capable of certain ascertainment by measurement, and after the trial by the jury, but pending the motion for a new trial, makes an accurate measurement, and swears that he was mistaken in his testimony, and the testimony is very material, and probably largely influenced the verdict, and the discrepancy between his testimony before the jury and his affidavit very great, and where this witness had been the agent of plaintiff, engaged in this very work measured at the instance of the defendant, who swears this information has come to his knowledge since the trial, and who produces the sworn affidavit of plaintiff's witness and another, to the measurement—a new trial, on the ground of newly discovered evidence, will be granted, the facts showing no want of diligence on defendant's part.

Corporations. Principal and agent. *Torts.* State. Frauds. Estoppel. New trial. Newly discovered evidence. Mistake. Before Judge HOPKINS. Fulton Superior Court. October Term, 1874.

When this case was called, it was announced to the court that the property of the Scofield Rolling Mill Company had been placed in the hands of a receiver at the instance of its creditors, on a bill filed against it; that these creditors were largely interested in this litigation ; that they were represented by Lochrane & Milledge, counselors at law, and asked to be heard through said counsel upon the argument. This the court permitted.

The case is sufficiently reported in the opinion.

D. F. & W. R. HAMMOND ; B. H. HILL & SON ; LOCH-RANE & MILLEDGE, for plaintiffs in error.

N. J. HAMMOND, attorney general; JOHN T. GLENN, solicitor general ; P. L. MYNATT ; PEEPLES & HOWELL, for the state.

JACKSON, Judge.

This suit was brought by the state, under an act of the general assembly, approved on the 15th of December, 1871. That act provides that " money or property stolen from the state or the Western and Atlantic Railroad, or fraudulently or unlawfully detained from the same, and any money or property of which the said road or the state may have been in any manner defrauded, or which is unlawfully detained from the same, or that may hereafter be in any manner unlawfully detained, may be recovered from the person perpetrating the fraud or guilty of the conversion, or from any person or persons or corporation into whose possession the same or the fund may be traced by competent proof (except persons taking *bona fide* for value, without notice of the fraud,) by a proceeding upon petition filed by the solicitor general, upon the information of

any citizen, in the superior court of the county where the defendant resides, if a resident of this state, and the person prosecuting said suit shall receive such compensation for himself and his counsel, and no more, as the court may think equitable and just, and to be paid out of the recovery, and not otherwise, under order of the court."

Under this statute the solicitor general of the Atlanta circuit filed an information against the Scofield Rolling Mill Company, and Lewis Scofield, William D. Cook and Asa L. Harris, and alleged that "the defendants defrauded the state of Georgia, and unlawfully and fraudulently detain from the same the sum of $57,156 00, besides interest, in this, that heretofore, to-wit: on the 15th day of January, in the year 1870, and at divers times from that day till the first day of February, 1871, the said Scofield Rolling Mill Company unlawfully and fraudulently collected from the treasury of the Western and Atlantic Railroad, (said road being then and there the property of the state of Georgia,) and from the treasury of said state, the sum of $47,600 00 for five hundred and sixty-two tons of railroad iron rails, pretended to have been furnished by the said company to the Western and Atlantic Railroad, but not furnished in point of fact, but being in excess over and above rails which were actually furnished to the said road, and the said defendants, Scofield, Cook and Harris, assisted in the perpetration of said fraud." Then follow similar charges for spikes and fish-bar iron, amounting in all to the sum first mentioned. It will be seen that the statute authorizes a recovery: first, for money or property stolen from the road; secondly, for money or property fraudulently or unlawfully detained from the same; thirdly, for any money or property of which the road may have been *in any manner* defrauded; and that this recovery may be had from the person perpetrating the fraud, or guilty of the conversion, or from any person or persons, or corporation, into whose possession the same or the fund may be traced by competent proof. Then follows an exception in favor of "persons taking *bona fide* for value, without notice of the fraud." It will be seen, also,

that the statute is very broad and comprehensive, designed to embrace all concerned in any manner in defrauding the railroad and the state. The information charges that the Rolling Mill Company did defraud the state, and does fraudulently and unlawfully detain a large amount of money from the state, and that the other defendants assisted in the fraud.

1. Some criticism was made in the argument upon the act and the manner in which the suit is brought, and it was urged that the word "person" does not embrace corporations in its purview, except where the fund is traced into the possession of the corporation. Stress was laid upon the fact that the act only mentions *corporations* in connection with the possession of the funds of the road; but the Code expressly declares that the word "person" in a statute does embrace corporations. Therefore, we think the suit is properly brought against the corporation, and that the allegation that this corporation, the Rolling Mill Company, defrauded the road and fraudulently and unlawfully collected from it, and unlawfully and fraudulently detains from the state to which it belonged, the sum of money averred, amply sufficient, under the statute, to sustain a suit against this corporation. It was argued, in order to support the view of the statute taken by counsel for the plaintiff in error, that a corporation cannot commit a fraud; that its agents are never authorized to commit frauds; that when they do they act without the scope of authority conferred upon them, and hence do not bind the corporation. We think this position wholly untenable. An aggregate corporation is an artificial person which can act, and does act, alone through agents. It deals with other corporations and with natural persons by its agents; it can deal with the world in no other way. It lives, breathes, moves only through its agents. It thinks, plans, feels through these agents. It is a trite remark that a corporation has no soul; however that may be, it certainly has motives which govern its conduct. These motives are expressed—manifested by the words and the actions of its agents. It talks, and deals, and trades through them. It makes honest contracts or unconscientious

The Scofield Rolling Mill Company *et al. vs.* The State of Georgia.

bargains through them.   It cannot live a moment without them.   They are its brains, its heart and its hands.   All its functions are performed by them, and all the objects of its creation by the state would fail without them.

2, 3.  Can a corporation, thus alone acting through agents commit fraud?   Surely it can?   It does commit fraud just as natural persons do.   The books are full of such frauds. How does it commit them?   Only through and by agents, because it trades and deals only through them.   Is it responsible for its frauds?   Surely it is.   It cannot be that this artificial person is the only being in the state wholly irresponsible for fraud!   It cannot be that it can send out agents to trade and traffic with mankind for it, and if the agent thus sent out by it cheats and defrauds men, that it can repudiate the conduct of the agent, and tell the world that the act was unauthorized, you must look to my agent, when the agent is, perhaps, a man of straw, wholly irresponsible, unable to respond to the person wronged and cheated!   We must, therefore, hold, upon principle, that a corporation is bound by the fraudulent conduct of its agents, engaged in its business, and in that line of business upon which it puts its agent to deal with the world.   All deceit, misrepresentation, falsehood, fraud, in the course of that business, whereby any other corporation or any natural person is cheated by the agent, is the act of the principal, the corporation, and the corporation is responsible therefor.   Authority abundantly sustains principle in the conclusion to which this irresistible logic leads: Code, sections 2199, 2200, 2201; 18 *Georgia*, 412; 6 *Ibid.*, 44; 36 *Ibid.*, 669.   Indeed, in the common transactions of life, in the ordinary relations of principal and agent, the same rule exists—the principal is bound for the fraud of the agent within the scope of his authority and on the line of his business.   Much more ought the principal to be bound by the agent, if that agent be the agent of a corporation, for the simple reason that any other principal may act for himself—a *corporation can never act except through its agent.*   If I am in the habit of sending my servant to a store

to trade for me, and he buy goods for himself, and have them charged to me, I am responsible. If the merchant be in the habit of sending out his clerk to collect his accounts, and I pay the clerk, whether the merchant receive the proceeds, the money I pay the clerk, or not, the account is paid, and I am released. In these cases, the merchant could have done his own collecting, and I my own trading, but we acted through agents, and are responsible. Can it be pretended that if the customer were a corporation, which bought by an agent, or the merchant a corporation, which did its collections by an agent, that such corporation would not be responsible? A corporation is clothed by the law of its creation and being with many privileges and immunities and franchises, but it is not excepted, and ought not to be excepted, from the operation of the common law of principal and agent. On the contrary, speaking in this sentence for myself, I think it ought to be held to a more rigid accountability for the conduct of its agents than ordinary principals, because its agents are its organs of sense, through which alone it can see, talk and act; and if they be cross-eyed and see double, and false-tongued and talk deceitfully, and left-handed and strike fraudulently, it ought to be responsible for its own double-dealing, deceit and fraud.

4. To the extent of holding the corporation responsible for the fraudulent conduct of all its agents in the course of the business entrusted to them, respectively, the chief justice and myself are thoroughly agreed, if the fraud does not pass the verge of a civil wrong and become a public crime. Where it does pass that boundary, he is inclined to think that the responsibility of the corporation ceases, whereas, my own mind is strong in the conviction that in many cases it does not cease. We have, therefore, agreed to put that proposition in the form of a question for the investigation of the profession, and to ask, is the corporation responsible for such fraud as becomes criminal; if so, in what cases, under what circumstances, and to what extent? I may be pardoned for saying that it cannot be that in no case where the deed becomes a public offense,

a misdemeanor or a crime, is the principal or corporation responsible. Almost every case of moral fraud is a violation of the criminal law. The offense of cheating and swindling has a wide range under our Code. Can it be possible that the moment the cheating becomes punishable criminally, the corporation is not responsible? Certainly it cannot be punished criminally, but I think it must restore what its agent cheated and swindled the persons with whom he traded out of. The chief justice is of the opinion that unless the corporation actually got the money or was in some way benefited by the fraud, if it be a crime or misdemeanor, it cannot be held responsible on the civil side of the court for the act of the agent. In the case I put of the merchant's collecting clerk, if he purloins the money after I pay him, and is guilty of larceny after a trust, the merchant is responsible and loses it; and in the case of my servant who trades for me, if he steal the goods between the store and my house, I must, nevertheless, pay for them. But, as before remarked, we do not decide this question, but leave it open for investigation and inquiry. He who desires to probe it to the bottom may be much assisted by the cases cited in the able arguments of the counsel on both sides: See 19 Wendell, 342; 13 *Ibid.*, 518; 7 Johns., 390; 2 Coms., 479; 3 Kern., 599; 1 Hill, 480; 3 Kern., 635; 3 Smith, 362; 18 *Georgia*, 432; 43 *Ibid.*, 583; 2 Barn. and Ald., 795; Collier on Partnership, 451 to 455 inclusive, 18 *Georgia*, 412, head-notes.

In this case the collecting agent of the Rolling Mill Company, the secretary and treasurer, while employed in his regular business as such collecting officer, made false charges for iron never sold and delivered to the road; and the court charged, in relation to his conduct and the responsibility of the company, thus: "If Cook was an officer or agent of the Scofield Rolling Mill Company, and as such was authorized, in the line of his duty, to collect bills for iron from the Western and Atlantic Railroad for the Rolling Mill Company, and if he, as such officer, or agent, falsely pretended that the company had furnished iron of the description men-

tioned in the declaration, and on that false pretense collected money for iron, when in truth no such iron had been furnished, it would be an unlawful collection for which he and the company would be liable." I think this charge right in substance and detail; nor would I add to or detract from it; but as the facts in this case show that Cook, the agent of the Rolling Mill, passed the line of a civil wrong, in all probability, and committed a public crime or misdemeanor, the chief justice would add to the charge these words: " provided the evidence shows that the money, so falsely and fraudulently collected by Cook was received by said Rolling Mill Company, or appropriated for its benefit."

5. But the defendant says further that even if Cook did fraudulently collect money from the road, the company is relieved, because Harris, an agent of the road, knew of the fraud and participated in it; and to this it is replied, that public agents do not stand on the same ground of equality with private agents, and as this road belonged to the state at the time, the agents of the road were agents of the state, hence public agents, and the state was not bound by their conduct. We think that the general rule as to public agents, is that they do not stand upon the same footing, with respect to their conduct being binding upon their principals, as private agents do; but in a case of this sort, when the state descends from her throne of sovereignty where, like a king, she can do no wrong, and becomes to all intents and purposes a railroad company, and when, moreover, she enters her own courts and sues one of her citizens, or an artificial person, the creature of her breath, her railroad agents, as to matters in litigation connected with the business of that road, are like other agents; and in respect to their conduct, she is bound like other principals. But to bind her, her agents must be acting within the scope and on the line of their duties.

6. Therefore, if Harris, who is charged as being complicated with Cook in this fraud upon the road, had been its treasurer and had paid the money out for the road, knowing that it was wrongfully paid, the road and the state would have

been charged with this knowledge on the part of this officer and would have been estopped by this fraud of her own agent in the discharge of his duty of paying out her money; but if this Harris were a subordinate officer of the road, its agent about business other than that of the custodian of its purse and the paymaster of its money, it would be illogical, unreasonable, absurd, it strikes us, to hold the road and the state chargeable with the knowledge and fraud of such an agent. The whole question of her estoppel turns upon the knowledge and fraud, and complicity of her agent entrusted with the money of the road. Did that Harris have notice? Did he participate in the wrong? If not, though any other agent, outside the line of his duty, did so participate, that fact will not affect the road or the state: Story on Agency, 125, 127, *et passim;* 3 Hill, 273.

7. But the motion for a new trial is predicated upon another ground. The officers of the Rolling Mill testified that the iron charged to, and paid for by the road, was delivered to the road; the road replied that it was not, and the witnesses for the road swore that iron enough to lay some twenty miles of road had been paid for, whereas, but some thirteen miles had been laid with it. William Pettis, the most important of the witnesses so sworn, having been the officer and agent especially charged with laying down the iron, and who had testified that but thirteen and one-half miles had been laid with this iron, after the trial actually measured the road on which this iron had been laid, and ascertained by measurement that it was eighteen and one-quarter miles; and the Rolling Mill Company produced his affidavit to that effect, and his acknowledgement that his testimony on the trial was based on recollection and was a *mistake.* Robert Young, who carried the tape line, and assisted Pettis in the measurement, swears to the accuracy and correctness of the measurement also; and Scofield, the president of the company, and the counsel, swore that the knowledge of this fact came to them all since the trial. Indeed, the measurement was made after the trial, and the knowledge could not have come to

them before. Nor do we think that there was *laches* or want of diligence in the Rolling Mill Company, or their counsel. They had no reason to believe that the witnesses on the part of the state had misrepresented the miles of iron actually laid down, in their testimony before the committee, and they had not heard that testimony repeated until the case was tried before the jury. Nor were they required to go to the expense of having the rails laid down measured; nor did they have that access to the men who knew all about where those rails were put down on the road, which the state had. Those men were the officers and agents of the road, or had been, and to go to them was like going into the camp of the enemy. Therefore, we think there is no shadow of ground for the charge of want of diligence. Is this new evidence material? It strikes us to be very material. The whole question turned upon the quantity of iron and spikes sold and delivered to the road by the mill. When the officers and witnesses for the mill swore that the iron was delivered, those of the road replied, where is it; it is not on our road? We have paid you for iron enough to lay many more miles of road than was laid by your iron actually delivered to us. Therefore, while there is in the record other evidence going to show that money was collected by the agent of the mill improperly and fraudulently for iron and spikes on raised bills and otherwise, yet we cannot tell what effect the testimony by mistake of this witness, William Pettis, had upon the jury, and how much the actual measurement correcting this mistake may change and modify the verdict. It may change it very largely, or it may vary it not very greatly. The attorney general requested us to write off what we should think wrong, and let the verdict as to the remainder stand. The difficulty is that we cannot ascertain how much ought to be deducted. It is for the jury to say.

The question for us is, under the facts disclosed, ought the Rolling Mill Company to have another trial? We think justice demands it, and the law fully authorizes it. Where a verdict is had by perjury it will be set aside, and a new trial granted: Code, sec. 4467. While there is no perjury here, on the contra-

ry, much honesty manifested on the part of William Pettis in the correction of a mistake, yet the effect upon the Rolling Mill Company is as bad as if there had been perjury; and the effect of the evidence of the witness, though honestly given yet false in fact, is as deleterious to the company as if it had been corruptly sworn. But this court has adjudicated the question, and decided the principle that a verdict obtained by mistake of a witness will be set aside, and a new trial ordered : *Tarver vs. McKay*, and another, 15 *Georgia*, 550. It is well that the law thus authorizes us to do what justice demands; and as the judicial servants of the state, we take pleasure in meting out to a corporation the creature of her breath, the justice which Georgia owes to all persons within her borders, natural or artificial, great or small, though that justice be rendered at the expense and to the depletion of her treasury. The state is too great and too noble to have any agents of hers to act otherwise towards the humblest of her people.

Let the verdict be set aside, and a new trial granted.