MADDOX *et al. vs.* OXFORD.

[This case was brought forward from the last term, under §4271 (a) of the Code.]

1. A husband cannot use his wife's separate money to pay his own debts, and if his creditor knowingly receives her separate funds for her husband's debt, she can recover the amount so paid. If the fund has been invested in realty by the husband's creditor, the husband being insolvent, the land is subject to her claim, and she may enforce a lien thereon in a court of equity.

2. If a witness answers interrogatories propounded to him by the commissioners, clearly and distinctly, and to the same purport that he has previously informed complainant's counsel that he would answer, and afterwards makes an afidavit for defendant that he was mistaken; or did not mean so to testify, a new trial will not be rendered necessary thereby.

3. Where it was sought by the wife to recover from a creditor of her husband, who had knowingly received her funds in payment of his debt, the amount so received with interest thereon, and to subject land in which such funds had been invested by the creditor, it was a proper subject of equitable set-off against her claim, that the husband held a bond for titles from the creditor to the land in controversy, which was worth much more than the amount of the wife's fund invested therein; that the husband was insolvent and unable to support her, and that she actually subsisted on the rents, issues and profits of the land. Contrast 61 *Ga.*, 662, which was an action of law.

(a.) While primarily the duty of maintaining the wife rests upon the husband, yet where he was insolvent and unable to do so, an application of her separate fund for her separate use, in purchasing food and clothing, would be held in equity to be a payment *pro tanto;* and if the money so applied to her use, arose from land the title to which was in the creditor of the husband, upon a bill by her to recover from such creditor and subject the land, on the ground that the creditor had knowingly received her funds in payment of her husband's debt and had invested them in the land, the creditor would be subrogated to the defence of payment by the husband, and could, in a court of equity, set off the money so applied for her benefit

(b.) The amount of such set-off would include only what was spent for the separate use of the wife, not including the support of the children; and it would be for the jury to determine how much of the amount so applied arose from the land and how much from labor, as to which the creditor had no right of subrogation.

4. In case of recovery by the wife, it is only the land into which her money entered, on which she can claim a special lien. The other property of the defendant would be bound by her general decree against him from its date, as in case of an ordinary judgment.

March 13, 1883.

Husband and Wife. Trusts. Equity. Liens. Interrogatories. Witness. Evidence. Set-Off. Before Judge SIMMONS. Monroe Superior Court. February Term, 1882.

Mrs. Mattie J. Oxford filed her bill against M. M. Maddox and her husband, J. F. Oxford, alleging, in brief, as follows: In 1875, her husband received of her guardian $705.27, which belonged to her as a distributee of her father's estate. Previously to that time her husband had purchased from Maddox a certain plantation for which he was indebted the sum of $2,000.00. He was insolvent at the time of the purchase, and Maddox knew it, and sold to him in expectation of receiving this money which belonged to her, in part payment for the land. Having recived her fund with full notice, Maddox purchased another piece of property known as the Davis place, and paid such funds as part of the purchase price therefor. Neither complainant nor her husband were able to pay the balance of the $2,000.00 due on his purchase; and in 1878, Maddox sued complainant's husband, obtained a judgment, caused the land to be levied on and bid it in for $355.00. He then caused the sheriff to dispossess complainant, which was the first knowledge she had that Maddox intended to deprive her entirely of her trust estate. Maddox and complainant's husband are both insolvent, and she claims the equitable title to both tracts of land to the extent that her money was invested therein. The bill waived discovery and prayed that complainant be de-

creed to have the equitable title to both tracts of land to
the extent that her money was invested therein, and that
Maddox account to her for rents, issues and profits; that if
the lands are worth more than the amount of her funds in-
vested in them, they may be sold and the proceeds applied
first to paying her claim; for subpœna and general relief.

Complainant's husband made no defence. Maddox an-
swered, in brief, as follows: In 1871, he sold to Oxford, com-
plainant's husband, one hundred and eighty acres of land
for $2,000.00, receiving two notes; the first for $1,200.00,
due December 25, 1871, and the other for $856.00, being
the remainder with interest added thereto, due December
25, 1872. Oxford went into possession in 1871. He was
not insolvent, but owned a considerable amount of prop-
erty, besides a legacy received from his father's estate
of between $700.00 and $1,000.00. Before the first note
fell due, Oxford, with the consent of this defendant,
sold one hundred acres of the land to one Ingram for
$800.00, $400.00 of which was paid in cash to this defend-
ant, and credit therefor given to Oxford. This formed a
part of the $800.00 paid by Oxford to this defendant. He
denies that any part of it arose from the separate estate
of complainant; but if it did, he denies all knowledge or
notice thereof. The remaining $400.00 which Ingram
owed for his purchase was paid to this defendant at the
instance of Oxford, and thereupon this defendant made
Ingram a deed to the one hundred acres; the original bond
for titles which he had given to Oxford was cancelled, and
another bond and new notes were executed. Oxford failed
to pay for the remaining eighty acres. Maddox sued him,
obtained judgment and bought the land at sheriff's sale.
He purchased the Davis land and took title in his own
name. This was done openly and without fraud; com-
plainant had notice of it and is barred; this defendant never
purchased the land with her funds nor did he ever hold it
for her in trust. He owes her no rents or profits. She
and her family resided upon the land purchased from

him from 1871 to 1877, and were supported by the income arising therefrom.   He denies all fraud, collusion, insolvency, or notice in respect to complainant's trust estate.

Evidence was introduced in support of the bill and answer, which it is unnecssary to detail.

The jury found for the complainant $705.00, with interest from December 25, 1871, " and that the land be subject."

The chancellor decreed that complainant recover the amount named with interest and that both the tract of land which had been held by Oxford and that which Maddox had purchased from Davis be sold, or a sufficiency thereof to pay complainant.

Maddox moved for a new trial, on the following among other grounds :

(1.) Because the verdict was contrary to law, evidence and the charge of the court.

(2.) Because the verdict was based on the interrogatories of W. B. Davis, in answering which he stated that " Maddox stated about the same as Oxford as to Oxford's ability to pay," which statement was written by mistake of the commissioners and the oversight of Davis, and was not, in fact, true.  [In support of this ground, the movant produced the affidavit of Davis to the effect that he did not intend to make any such answer, and did not understand it when he signed the answers to the interrogatories, and that the statement was a mistake.   Affidavits of jurors were also offered to the effect that in making up their verdict they considered the evidence of Davis of great importance as being the statement of a disinterested witness; but these were rejected by the court.   As a counter showing, respondent produced the affidavit of the commissioners to the effect that each question was read clearly and distinctly to Davis, and the answers wore written as nearly in his words as practicable, and in every instance embodied the idea conveyed by the witness; that the answers were read over to him and signed by him; and that they were disinterested, and acted at the instance of the attor-

neys of both parties. They also introduced affidavits of complainant's attorneys to the effect that previously to the execution of the interrogatories, Davis had made statements to them substantially corresponding to the evidence given by him.]

(3.) Because the court rejected evidence offered by Maddox to show that the land in controversy was worth for rent $200.00 per annum; that Oxford had no means; and that this land and its products were the only means of support of Mrs. Oxford and her family.

(4.) Because the decree was not in accordance with the verdict.

The motion was overruled, and defendants excepted. Direct exception was also taken to the verdict and decree.

JOHN I. HALL; STONE & TURNER; JOHN C. REED, for plaintiffs in error.

BERNER & TURNER, for defendants.

JACKSON, Chief Justice.

This bill was brought by Mrs. Oxford against her husband and M. M. Maddox, to recover $705.00 with interest, on the ground that her husband had used her separate estate to that amount to pay Maddox in part for a tract of land bought for himself, and to charge the land afterwards sold by Maddox for balance of purchase money and bought by himself at the sheriff's sale, with the debt of complainant, Maddox being cognizant of the fact that the husband had used her money thus to pay his own debt. Under the charge of the court, the jury found for complainant, principal and interest; a motion for a new trial was made, and on its denial error is assigned here, as well as upon the decree, because unauthorized by the verdict.

1. There is no doubt that there is equity in the bill, and if there be no error of law by the court, and the facts sus-

tain the allegations, there is no doubt that the verdict is right. The principle is ·well settled that the husband ·cannot use the wife's separate money to pay his debts, and if his creditor knows it is her separate fund, she can re-·cover it; and if the fund be invested in real estate by the husband's creditor, the husband being insolvent, the land is subject to her claim, and she has a lien thereon for the amount of it. Code, §§1754, 1783; 54 *Ga.*, 543; 56 *Ib.*, §22; 61 *Ib.*, §662; Perry on Trusts, 122. If the husband. held her money, not as a loan, but for her, he was her trustee, and whosoever helped him to misapply it to the husband's own debt, held what he got as her trustee too, and when traced to his land, it is liable therefor. Code, §§3151, 3152, 2316.

2. If a witness answer interrogatories put to him by the ·commissioners, clearly and distinctly, and to the same purport that he had previously informed complainant's counsel that he would answer, and afterwards make an affidavit for defendant that he was mistaken, or did not mean so to testify, a new trial will not be granted on account of such alleged mistake. This case is unlike those referred to in ·8 *Ga.*, 136; 10 *Ib.*, 143; 15 *Ib.*, 550; and 54 *Ga.*, 635.

3. The jury allowed the complainant principal and interest. The defendant tendered evidence to show that the wife occupied and lived on the land (worth $2,000,00) in which her money ($705.00) was invested, and that the rents, issues and profits thereof were worth $200.00 per annum; that her husband was insolvent and unable to support her; and that she actually subsisted on these rents, issues and profits of the land while the title was in Maddox, and while the husband only had a bond therefor, on payment of purchase money, the testimony being offered with a view to set off the rents against her claim. The court rejected this testimony, and the question on the point is, was the evidence admissible? Or, in other words, ·can the defendant, Maddox, set off this support of the wife against her claim on him? In *Chappell vs. Boyd*, 61 *Ga.*,

662, on an action at law for the recovery of the wife's
money in the hands of one who got it from the husband
knowingly, it was held that it could not be so set off. But by
closely scanning the decision in that case, as set out in the
opinion, on page 670, this rule is applied because the wife's
liability was primarily to the husband, and as he was not
a party, the doctrine of subrogation of his creditor to his
right could not be applied in behalf of the creditor. The
intimation is that, had the case been in equity and the
husband been thus made a party, so as to settle the rights
of all the parties, the set-off might have been allowed.

In this case, the complainant is in equity; she invokes
the aid of a court of equity to get her rights; she must,
therefore, do equity. There is no positive proof that the
fund derived from the wife's father's estate was held in
trust for her by the husband; nor is there any that he held
it as a loan from her. If as a loan, the verdict is wrong,
and there should be no recovery; if as her trustee, the
husband is bound to account to her for principal and in-
terest. If he has paid her the interest for her exclusive use,
then she cannot recover it again from him. If she cannot
recover it from him, it is difficult to reason to the conclu-
sion that she can recover it from Maddox; for Maddox is
only responsible upon the principle that he has connived
knowingly with her husband in taking her money for his
debt, and only to the extent of what is due thereon. Does
it make any difference that her husband paid her the in-
terest, not in cash, but in any other valuable thing equiva-
lent to cash? And if he did, does her husband owe her
that much? If he does not, Maddox does not; no more
than he would owe her nothing at all, if her husband had
paid the entire debt to her. As intimated in the case of
*Chappell vs. Boyd*, in 61 *Ga.*, *supra*, the creditor must logi-
cally and necessarily stand in the shoes of the husband,
and be subrogated to his rights.

Now, the proof offered was to the effect that the hus-
band was insolvent and wholly unable to maintain his

wife in the necessaries of life—food and clothing; and that the food and clothing she got during all the time he was in possession of this land, for which he had not paid Maddox, and in part payment of which her money went, came out of this land—the crops made thereon,—and that, therefore, equity, as she knocks at the door of her temple of justice, will not permit her to enter, except upon the terms that she do equity; and if she got food and clothing out of this land so held by her husband, when she demands that the money her husband put in it, of hers, with interest, must be paid her, it is inequitable for her to take that part which she exclusively used herself. It is difficult to imagine a more exclusively personal use of money, or the profits of land, than what she ate and wore on her own person. Of course, while, as long as her husband could maintain her, it was his duty to do so, yet, when he no longer could, and paid her separate money for her separate use, when he paid it to her for that separate use, either money or other thing that brought food and clothing, to that extent his debt to her was paid in equity and good conscience, so far as it went to her exclusive use and separate enjoyment, and she cannot recover that part of it from one who got it from her husband to pay the husband's debt. This ought to be especially so, when the husband paid her the food and raiment, not with his own money, or the property, or profits of property, belonging to himself, but out of the profits of property of that creditor of his from whom she seeks to recover.

We do not mean to say that Maddox can set off the entire usufruct of the land, or that spent in the support and maintenance of any of the family. It is only that spent by her for her own separate and sole support; not that of child or children, but that which enured to her exclusive use which can be set off, upon the principle that her husband has paid her that, and has paid it out of Maddox's property, for her own separate support.

Nor do we mean to say how much the land contributed

and how much the labor upon it did to this support. That labor was not put on it by him, and that contribution is not his. It is only what the land would yield, and did yield, and the part of its yield that went into her own support. The estimate must be made by the jury on the new trial, from all the proof which may be submitted. Inasmuch as we think that the court should have let in this testimony to the jury, as a mode of reaching this equitable set-off above declared, with the aid of other testimony as to the amount the complainant got annually from this land for her own exclusive use, we reverse the judgment and award a new trial.

4. In regard to the decree, it is unnessary to pass upon it, as a new trial is awarded. We will say, however, that it is only the land into which her money entered, upon which she can claim a special lien. Of course, all the other property of Maddox would be bound by her general decree against him from its date, just as a general judgment would bind it all.

Bearing in mind the principle repeatedly rocognized by this court, that transactions between husband and wife should be closely scanned, as capable of being secretly and fraudulently concocted to perpetrate wrong upon creditors of the husband, and that the principle is more clearly and strongly applicable in cases where no writing of any sort defines the agreements between them, we are less reluctant than we would otherwise be, to differ with the learned and able presiding judge in respect to the grant of a new trial; and we send the case back for the reason of the exclusion of the testimony offered bearing on the set-off, as well as for the reason that a more thorough investigation may open the case to a clearer view of the truth of the facts and the equities of the parties.

Judgment reversed.