BRINSON vs. FAIRCLOTH.

82  185
99  142

1. Newly discovered evidence of the same kind as that which was used on the trial, and going to the same point, is cumulative, and therefore not cause for a new trial.
2. Discovery, after the trial, that a witness for the prevailing party made a mistake in his testimony, is not cause for a new trial, when a correction of the mistake would not be decisive of the controversy, and when there is no explanation of why the fact touching which the mistake was made, was not shown by other witnesses to be what it really was.
3. It is not improper for the court to send the jury, under the charge of a sworn bailiff, to the only public house in the town or village where the court sits, to obtain a meal at the public expense, though the house be kept by one of the counsel in the cause with which the jury is charged, he being also a brother-in-law of his client, in whose favor the verdict was subsequently rendered.

November 21, 1888.

Evidence. New trial. Practice in superior court. Jury and jurors. Administrators. Before Judge HINES. Emanuel superior court. November term, 1887.

Reported in the decision.

JOSIAH HOLLAND, T. H. POTTER, CAIN & POLHILL and GAMBLE & HUNTER, for plaintiff in error.

ALFRED HERRINGTON and TWIGGS & VERDERY, contra.

BLECKLEY, Chief Justice.

Brinson, the plaintiff in error, is the step-son of the defendant in error, Mrs. Faircloth, formerly Mrs. Brinson. He was the administrator upon his father's estate, in which she, as widow of the deceased, took dower. Before the commissioners made their return, he purchased her dower estate, paid her the price agreed upon, $400, and took her deed of conveyance. She afterwards became dissatisfied with the bargain, and filed her bill

for a rescission of the contract and for cancellation of the deed, alleging fraud and misrepresentation on his part in making the purchase. The jury found in her favor, and he moved for a new trial, which motion the court overruled.

The uncontested facts are, that the dower lands in the homestead tract, as finally laid off, consisted of 200 acres; that the commissioners to define the dower acted upon the matter twice, the first time several months before the purchase, and the second time several months afterwards; that they laid off at first 83 acres only; that they reconsidered their action and determined to increase the quantity to 200 acres, and that after this decision was arrived at, some interval elapsed, and then, in the spring of 1886, they actually laid off the 200 acres. Their return was dated in February, filed in March, and made the judgment of the court in December of that year. The deed from Mrs. Brinson, now Mrs. Faircloth, to Brinson, was executed in October of the previous year (1885). It leaves the number of acres blank, and conveys all right, title or interest she has or may have as her dower in the lands of her late husband, agreeably to a return of the commissioners "to be made," etc. The evidence strongly indicates that the reason the commissioners laid off at first only 83 acres was, that Brinson, the administrator, did not show to the commissioners all the lands of his intestate or produce all the title deeds. It was the discovery of this fact which induced them to reconsider. That before the widow sold to Brinson, the commissioners did reconsider and agree amongst themselves to increase the dower in the homestead tract to 200 acres, seems certain. Brinson himself says this was so, and that he so informed her. She denies that he gave her the information, or that she had it from any other source. On the contrary, she alleges

and testifies that he represented to her that but 80 acres had been allowed, and in reliance on that statement she made the sale, and conveyance, knowing nothing of any reconsideration by the commissioners.

1. A new trial is claimed because of the newly discovered evidence of Kirkland, who will testify that Mrs. Faircloth is his sister, that she resided in his family when negotiations were in progress between her and Brinson, that she then knew the commissioners had determined on allowing her 200 acres, that he advised her to sell to Brinson, expressing the opinion that $400 was enough, and that she also thought it sufficient. The whole relevancy of this consists in its bearing upon the disputed question as to whether Mrs. Faircloth knew, before she conveyed to Brinson, that the commissioners had reconsidered their first action and determined to allow her 200 acres. And on this question, it is cumulative; for Brinson testified at the trial that he himself gave her the information. The newly discoved · evidence, therefore, would be more evidence of the same kind to the same point. It would go to support Brinson and to discredit his adversary as a witness.

2. Pughsley, one of the commissioners, and a witness for Mrs. Faircloth, made affidavit after the trial that he was mistaken in his testimony to the effect that the meeting of the commissioners to reconsider and their agreement to lay off 200 acres were in 1886, and that, on refreshing his memory, he knows the meeting and agreement took place between January and June, 1885.

According to the previous decisions of this court, the mistake of a witness may or may not be cause for a new trial. *Wilson vs. Brandon*, 8 *Ga.* 136; *Tarver vs. McKay*, 15 *Ga.* 552; *Jones vs. McCrea*, 37 ·*Ga.*

48; *Scofield vs. The State*, 54 *Ga.* 635; *Jossey vs. Stapleton*, 57 *Ga.* 144; *Booher vs. Worrill, Id.* 236; *Valentino vs. Wiel*, 67 *Ga.* 15; *Maddox vs. Oxford*, 70 *Ga.* 179. Here a correction of the mistake would not be at all decisive of the merits of the case, for it might be very true that the commissioners agreed upon the change from 83 acres to 200, and Mrs. Faircloth not have been informed of it. Her knowledge of it was the important matter. Brinson swears she had such knowledge, and she swears she did not have it. The case turns upon the credibility of the one as compared with the other, and at bottom this newly discovered fact would only tend to impeach her by some slight corroboration of him. All it would do for the case would be to render his story more probable, and thus indirectly weaken the force of her contradiction. Moreover, if the fact was as Pughsley now, after refreshing his recollection, says it was, it could most probably have been proved at the trial by some of the other commissioners. It was not a fact unknown to Brinson, and if he relied upon it, why did he not prove it by some of them? He knew the commissioners had met and decided on the 200 acres before he traded with his step-mother, and when Pughsley testified it was afterwards, why did he not call witnesses to contradict him? There is no explanation either of his failure to do this, or of his failure to be ready with witnesses to prove the real time of the transaction before he announced ready for trial. As the return of the commissioners was not made till long after his purchase, he must have anticipated that it would become material to show that the decision to which the return gave effect was made before. If the commissioners, other than Pughsley, were inaccessible in time to avail him, that might excuse his apparent

want of diligence, but no such excuse is in the record.

3. One of the counsel for Mrs. Faircloth was her brother-in-law, and kept the hotel in the county town where the court was held. Whilst the jury were charged with the case, the court sent them to the hotel duly attended by a sworn bailiff, to take a meal at the public expense. They had, so far as appears, no improper communication with any one, and neither said nor heard anything touching the case. The record is silent as to any other inn or public house at which the jury could have been entertained, and we take it for granted there was no other. No impropriety, or even irregularity, appears in what the court did. In this degenerate age, jurors must eat. It follows that they are to be sent when necessary to where they can get something to eat, and to the only place of that kind, when there is but one in town. It was said in the argument that the very atmosphere of the hotel was charged with influence in favor of the landlord's kinswoman and client. If the jury were hungry, most likely the table neutralized the atmosphere during the short time they were exposed to its influence.

In the other grounds of the motion for a new trial, we discover nothing calling for separate notice. If Mrs. Faircloth testified truly, and the jury certainly believed her, the verdict was warranted. It is of doubtful public policy to uphold a purchase by an administrator of a dower estate, made before the return of the commissioners has been filed and finally acted upon by the court. Such a purchase by one occupying a sort of confidential relation to the widow, and also having duties, it may be, in behalf of heirs and creditors to resist the return of the commissioners, is rather too hasty. The administrator represent heirs and creditors in proceed-

ings by the widow to lay off and assign dower. Code, §§4043, 4047. In this case, it seems unfortunate that the administrator did not wait until the proceedings were concluded.

Judgment affirmed.