### 38079. CALDWELL v. HOSPITAL AUTHORITY OF CHARLTON COUNTY et al.

HILL, Presiding Justice.

This case involves constitutional challenges to the "reimbursable employer" provisions of our Employment Security Law, Code Ch. 54-6. The facts are that Alphya M. Benefield worked for the Hospital Authority of Charlton County until her voluntary resignation on October 12, 1979, to accept another job. Benefield commenced working for the other employer, but that relationship was terminated and on January 24, 1980, Benefield filed a claim for unemployment compensation. The Employment Security Agency of the Department of Labor determined that the employee was eligible for benefits, and that the Hospital Authority, as a reimbursable base period employer, was required to reimburse the Agency for a part of the benefits paid to her. Under Georgia's Employment Security Law, the Hospital Authority was a "reimbursable employer"; i.e., it was entitled to and did elect to reimburse the Agency for benefits paid and chargeable to it, rather than to make regular contributions to the Unemployment Compensation Fund. Code Ann. § 54-622.1 (b).

The Hospital Authority appealed to the Department of Labor's Board of Review the Agency's determination that it was chargeable for part of the employee's claim. Code Ann. §§ 54-612 through 614. The Board of Review affirmed the decision of the Employment Security Agency, Code Ann. § 54-615, and the Hospital Authority appealed to the superior court. Code Ann. §§ 54-618 through 619. The superior court reversed the decision of the Board of Review, holding that Code Ann. §§ 54-622.1 (c) (1) and (e) were unconstitutional as a denial of due process because they place part of the burden of paying unemployment benefits on an employer who is not responsible for the termination of employment. The Commissioner of the Department of Labor and the employee bring this appeal.

1. Relying on a line of cases which stand for the proposition that "A county or municipal corporation, created by the legislature, does not have standing to invoke the equal protection and due process clauses of the State or Federal Constitution in opposition to the will of its creator," *City of Atlanta v. Spence,* 242 Ga. 194, 195 (249 SE2d

554) (1978), the Commissioner first contends that the Hospital Authority does not have standing to challenge the Employment Security Law on due process and equal protection grounds, which are the only constitutional attacks raised here. The Hospital Authority concedes that neither a county nor a municipal corporation has standing to challenge a state statute on state, *City of Atlanta v. Spence,* supra, or federal equal protection or due process grounds, Williams v. Baltimore, 289 U. S. 36 (53 SC 431, 77 LE 1015) (1933); Village of Arlington Heights v. Regional Transp. Auth., 653 F2d 1149, 1151-53 (7th Cir. 1981); Appling County v. Municipal Electric Authority of Ga., 621 F2d 1301, 1307-08 (Appendix) (5th Cir.), cert. denied, 449 U. S. 1015 (1980). But it insists that this doctrine does not encompass a Hospital Authority. The Commissioner, for his part, points out that the Hospital Authority exists only by virtue of legislative authorization, Code Ann. § 88-1803, and that it is a "governmental entity." *Cox Enterprises v. Carroll City/County Hospital Auth.,* 247 Ga. 39 (273 SE2d 841) (1981).

We find it unnecessary to decide whether absent legislative authorization a Hospital Authority would have standing to challenge a state statute on the basis that it violated the equal protection and due process clauses of the state constitution, Code Ann. §§ 2-101, 2-203, because in this case we find that legislative authorization exists. The General Assembly authorized the Hospital Authority "to exercise any or all power now or hereafter possessed by private corporations performing similar functions." Code Ann. § 88-1805 (s). A private corporation is, of course, a "person" within the meaning of the due process and equal protection clauses. Code Ann. §§ 2-101, 2-203; Code Ann. § 102-103. A private corporation may attack a state statute on the grounds that it violates due process and equal protection. See, e.g., *Georgia Franchise Practices Comm. v. Massey-Ferguson, Inc.,* 240 Ga. 743 (242 SE2d 69) (1978). Thus the Hospital Authority has been granted standing by statute to attack the Employment Security Law on the grounds that it violates the due process and equal protection clauses of the Georgia Constitution. See Williams v. Baltimore, supra, 289 U. S. at 47-48. Because we find no difference here between the Hospital Authority's state and federal due process and equal protection rights, we need not decide the question of whether the Hospital Authority has standing to raise federal due process and equal protection issues. Having decided that the standing question does not preclude judicial review, we proceed to the substantive issues.

2. The Hospital Authority, as pointed out above, exercised its election to be a reimbursable employer as opposed to a contributing employer under the Employment Security Law. Code Ann. § 54-622.1

(b).[1] Pursuant to this election, the Hospital authority must pay "the full amount of regular benefits plus one-half of the amount of extended benefits paid during such quarter or other prescribed period that is attributable to service in the employ of such organization." Code Ann. § 54-622.1 (c) (1). In this case, the Employment Security Agency determined that the employee was eligible for benefits and that the Hospital Authority was a base period employer. The Hospital Authority contends, and the superior court held, that allowing an unemployed claimant to collect benefits based on a period of employment which the employee voluntarily terminated offends its rights to substantive due process because it bears no rational relationship to the object of the Employment Security Law and because the Hospital Authority would be being held liable without fault. We disagree as to both points.

Code Ann. § 54-602 states the purpose of Georgia's Employment Security Law: "As a guide to the interpretation and application of this Chapter, the public policy of this State is declared to be as follows: Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this State. Involuntary unemployment is therefore a subject of general interest and concern, which requires appropriate action by the legislature to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker or his family. The achievement of social security requires protection against this greatest hazard of our economic life. *This can be provided by encouraging employers to provide more stable employment and by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment,* thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance. The legislature, therefore, declares that in its considered judgment the public good, and the general welfare of the citizens of this State require the enactment of this measure, under the police powers of the State, for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own." (Emphasis supplied.)

The Hospital Authority maintains that because the statute

---

[1] If the Hospital Authority had not elected to be a reimbursable employer; i.e., if the Authority were a contributing employer, it would have paid contributions into the Unemployment Compensation Fund from which this employee's claim would have been paid, without affecting the employer's benefit experience. See Division 3. We do not here decide the question of whether a person who has elected to come under a provision of law may thereafter challenge the constitutional validity of that provision.

states that one mechanism for achieving its purpose (spreading and lightening the burden of involuntary unemployment) is that of "encouraging employers to provide more stable employment," it does not contemplate that benefits should be payable on the basis of a period of employment voluntarily terminated by the employee. It would have us overlook the other mechanism endorsed by the statute, that of "the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment...." In our view, the purpose of the Employment Security Law is to spread and lighten the burden of unemployment by allowing involuntarily unemployed workers to collect benefits based on their work history, even though that work history may encompass a period of employment which the employee voluntarily terminated. Furthermore, that this bears a substantial relationship to the purpose of the law seems clear beyond peradventure. It does in fact spread and lighten the employee's burden of involuntary unemployment. We note that the scheme the Hospital Authority advocates (disqualification from benefits calculated on the basis of any period of employment which was voluntarily terminated by the employee) would have the significant disadvantage of discouraging employees from seeking better opportunities, as the employee apparently did here. Therefore we hold that the fact that the employee is entitled to benefits based on her employment by the hospital bears a substantial relationship to the purpose of the Employment Security Law. As the United States Supreme Court said with reference to Louisiana's Unemployment Compensation Fund, "the payments to the employees were not made to discharge any liability or obligation of respondent, but to carry out a policy of social betterment for the benefit of the entire state." NLRB v. Gullett Gin Co., 340 U. S. 361, 364 (71 SC 337, 95 LE 337) (1951). Compulsory contributions for employment security are like many other taxes; they are payable without regard to fault. It follows that the employee's eligibility for benefits and the Hospital Authority's resulting liability do not offend the due process clause of Georgia's Constitution. See 16A CJS Constitutional Law § 689 (2) (1956).

3. Nor do we find that Code Ann. §§ 54-622.1 (c) (1) and (e) violate the equal protection clause of the Georgia Constitution. Code Ann § 54-622.1 (e) provides for allocation of benefit costs to be assessed against reimbursable employers. Code Ann. § 54-622.1 (c) (1) provides in the last sentence thereof: "Noncharging provisions applicable to contributing employers in section 54-622 (2) do not apply to employers who make payments in lieu of contributions." Code Ann. § 54-622 (2) provides that: "Benefits paid to an individual shall be charged, in the amount hereinafter provided, against the

accounts of his base-period employees:... Provided, further, that an employer shall not be charged with benefits paid if no disqualification is imposed as provided in section 54-610 only because such employer is not the most recent employer...." Thus had the Hospital Authority been a contributing employer, the rate at which it paid into the Unemployment Compensation fund would not be increased because of benefits paid this employee, which is to say the employer would not be adversely affected by the fact that she was eligible for benefits even though it was a base period employer, because it was not the employer that terminated her employment. The General Assembly declined to apply this rule to reimbursable employers such as the Hospital Authority. Since contributing employers and reimbursable employers constitute two separate classifications, and since the classifications themselves are rational and, indeed, operate to the overall benefit of the Hospital Authority and other reimbursable employers, the General Assembly was entitled to treat contributing and reimbursable employers differently and we find no denial of equal protection. See *Ingalls Iron Works Co. v. Chilivis,* 237 Ga. 479, 482-483 (228 SE2d 866) (1976); *Great Northern Nekoosa Corp. v. Bd. of Tax Assessors,* 244 Ga. 624 (2) (261 SE2d 346) (1979). It should be noted that the Hospital Authority may become a contributing employer by terminating its election to be a reimbursable employer. See Code Ann. § 54-622.1 (b) (3).

*Judgment reversed. All the Justices concur, except Marshall, J., who concurs in the judgment only.*

DECIDED FEBRUARY 9, 1982.

*Michael J. Bowers,* Attorney General, *Kirby G. Atkinson,* Assistant Attorney General, for appellant.
*John B. Adams,* for appellees.
*Jones, Bird & Howell, Jack Spalding Schroder, Jr., Scott R. Owens,* amicus curiae.