424 So.2d 553 (1982)
MISSISSIPPI EMPLOYMENT SECURITY COMMISSION
v.
CITY OF COLUMBUS LIGHT & WATER DEPARTMENT, et al.
Nos. 53408, 53410-53418, 53508 and 53630.
Supreme Court of Mississippi.
December 1, 1982.
Rehearing Denied December 15, 1982.
Fred J. Lotterhos, Jackson, for appellant.
Gholson, Hicks & Nichols, Lydia Quarles, Columbus, Jacobs, Griffith, Pearson, Eddins & Povall, Benjamin E. Griffith, L. Ellis Griffith, Cleveland, James M. Hood, Jr., Houston, William B. Compton, Witherspoon, Compton & Mason, Meridian, for appellees.
*554 Before SUGG, P.J., and PRATHER and HAWKINS, JJ.
HAWKINS, Justice, for the Court.
Before us are the consolidated appeals of the Mississippi Employment Security Commission from judgments of the Circuit Court of the First Judicial District of Hinds County reversing the commission's assessment of charges against political subdivisions of this state for unemployment benefits paid former employees of the subdivisions.
In all except two of the cases the issue is whether the political subdivision is liable for unemployment benefits paid unemployed workers eligible for benefits under state law. We hold they are, and reverse and render as to these cases.
In two of the cases on appeal unemployment benefits were erroneously paid by the commission, and in these cases we hold the political subdivisions are not liable and affirm.

HISTORICAL AND LEGAL BACKGROUND
For a number of years this state has had a Mississippi Employment Security Law to promote employment security in job placement and to provide through the accumulation of reserves for the payment of compensation to unemployed individuals. Miss. Code Ann. § 71-5-1 (1972). The public policy of this state has been to require employers, with certain exceptions, to pay a certain amount of each employee's wages to the Employment Security Administration fund of the state treasury. Miss. Code Ann. §§ 71-5-3, 71-5-111 (1972). This law and the programs thereunder have been administered by the Mississippi Employment Security Commission. Miss. Code Ann. § 71-5-101 et seq. (1972).
Under formulas and rates set by law, employers have paid a certain percentage of each employee's wages to the fund. Unemployment benefit records are kept on all employees, and provision is also made whereby employers who have a low "experience-rating record" will be charged "modified rates." Thus, employers periodically will have their required contributions modified based upon the unemployment benefits which have been paid during a previous set period of time, or "base period." Miss. Code Ann. §§ 71-5-351 to -355 (Supp. 1981).
In determining the modified rates to an employer, § 71-5-355(2)(b)(ii) provides that benefits paid to an eligible individual shall be charged against the experience-rating record during the base period, but benefits will not be charged to the employer's experience-rating record if the commission finds that the individual:
1. Voluntarily left the employ of such employer without good cause attributable to the employer,
2. Was discharged by such employer for misconduct connected with his work,
3. Refused an offer of suitable work by such employer without good cause, and the commission further finds that such benefits are based on wages for employment for such employer prior to such voluntary leaving, discharge or refusal of suitable work, as the case may be, or
4. Had base period wages which included wages for previously uncovered services as defined in section 71-5-511(e) to the extent that the unemployment compensation fund is reimbursed for such benefits pursuant to section 121 of P.L. 94-566, ...
In 1977, the Mississippi Employment Security Law was expanded to include political subdivisions of this state as employers. 1977 Laws ch. 497 (codified at Miss. Code Ann. § 71-5-359 (Supp. 1981)). As a result, they joined nonprofit organizations and state boards and instrumentalities. See Miss. Code Ann. §§ 71-5-357 (prior to amendment, 1971 Laws ch. 519), 71-5-359 (Supp. 1981). These organizations as employers were not required to make contributions, however, but were afforded the option to reimburse the state unemployment fund for benefits paid to unemployed workers attributable to service in that respective organization. Miss. Code Ann. § 71-5-359 *555 (Supp. 1981). Hence, those electing this option are termed "reimbursing employers," rather than "contributing employers."
In carrying out the purpose of the Mississippi Employment Security Law, this state is not completely autonomous. The United States Government has an impact upon its existence and administration. See 26 U.S.C.A. §§ 3301-3311, the "Federal Unemployment Tax Act," and in particular, §§ 3304-3305, 3309. Within the parameters and guidelines of this Federal Act and regulations thereunder, however, our state law controls.
In order for any unemployed worker to be entitled to unemployment benefits there are certain requirements. A "base period" is first considered. Fifteen months, or five quarter years, are counted. The "base period" is the first four calendar quarters of a completed five calendar quarters, computed as of the first day of the week when a claimant filed for benefits. Miss. Code Ann. § 71-5-11 (Supp. 1981). See Appendix for illustration.
Eligibility for benefits requires the claimant to have earned wages in insured work equal to 36 times his weekly benefit amount, and he must have been paid wages in insured work during at least two of the quarters in his base period. Miss. Code Ann. § 71-5-511 (Supp. 1981).
The claimant is entitled to be paid a weekly benefit of 1/26th of the total wages he was paid in the highest quarter of his base period, provided he was paid at least $160 in such quarter. Further, the claimant must receive at least $10 in weekly benefits, and cannot be paid more than $90 a week. Miss. Code Ann. § 71-5-503 (Supp. 1981). He can receive no more than 26 unemployment benefit payments over a benefit year, defined in Miss. Code Ann. § 71-5-11 C., supra.
Miss. Code Ann. § 71-5-513 (Supp. 1981) provides for circumstances which will disqualify an otherwise eligible unemployed claimant. Subparagraph A. (1) of this section provides that if a worker voluntarily without good cause leaves a job, he cannot qualify for benefits until he has thereafter earned for personal services by an employer an amount equal to at least eight times his weekly benefit amount. Subparagraph A. (2) of this section provides that in the event the worker has been discharged for misconduct connected with his work, he may be disqualified, as prescribed by the commission, for not exceeding twelve weeks following such discharge.

FACTS AND LAW
In ten of the cases before us the individual employees voluntarily left or were discharged for cause from the employ of political subdivisions, "reimbursing employers," and subsequently secured employment in jobs with "contributing employers," where they were employed for a sufficient period of time to qualify for unemployment benefits under § 71-5-513, supra.[1] Thereafter, the second job with the contributing employer played out and they became unemployed.
These unemployed workers were clearly entitled to unemployment benefits under our statutes. The question before us as to these unemployed workers is whether the political subdivisions should be required to pay the pro rata share of unemployment benefits dollar for dollar, based upon these *556 individuals' length of employment with them. Or, should the unemployed workers be paid from the unemployment fund, without resort to these subdivisions for reimbursement?
To answer these questions it is necessary for us to discern the legislative intent of Miss. Code Ann. § 71-5-357, supra. The pertinent portions of this statute read:
§ 71-5-357. Regulations governing nonprofit organizations.[2]
Benefits paid to employees of nonprofit organizations shall be financed in accordance with the provisions of this section... .
(a) Any nonprofit organization which ... is or becomes subject to this chapter ... shall pay contributions under the provisions of sections 71-5-351 to 71-5-355 unless it elects ... to pay to the commission for the unemployment fund an amount equal to the amount of regular benefits and of one half (1/2) of the extended benefits paid, that is attributable to service in the employ of such nonprofit organization, to individuals for weeks of unemployment which begin during the effective period of such election; ...
(b) Payments in lieu of contributions shall be made in accordance with the provisions of paragraph (i) of this subsection.
(i) At the end of each calendar quarter, or at the end of any other period as determined by the commission, the commission shall bill each nonprofit organization (or group of such organizations) which has elected to make payments in lieu of contributions, for an amount equal to the full amount of regular benefits plus one half (1/2) of the amount of extended benefits paid during such quarter or other prescribed period that is attributable to service in the employ of such organization... .
(iv) Payments due by employers who elect to reimburse the fund in lieu of contributions as provided in this subsection may not be non-charged under any condition. The reimbursement must be on a dollar for dollar basis (one dollar ($1.00) reimbursement for each dollar paid in benefits) in every case... .
(c) Each employer that is liable for payments in lieu of contributions shall pay to the commission for the fund the amount of regular benefits plus the amount of one half (1/2) of extended benefits paid that are attributable to service in the employ of such employer. If benefits paid to an individual are based on wages paid by more than one (1) employer and one or more of such employers are liable for payments in lieu of contributions, the amount payable to the fund by each employer that is liable for such payments shall be determined in accordance with the provisions of paragraph (i) or paragraph (ii) of this subsection.
(i) If benefits paid to an individual are based on wages paid by one or more employers that are liable for payment in lieu of contributions and on wages paid by one or more employers who are liable for contributions, the amount of benefits payable by each employer that is liable for payments in lieu of contributions shall be an amount which bears the same ratio to the total benefits paid to the individual as the total base-period wages paid to the individual by such employer bear to the total base-period wages paid to the individual by all of his base-period employers.
(ii) If benefits paid to an individual are based on wages paid by two (2) or more employers that are liable for payments in lieu of contributions, the amount of benefits payable by each such employer shall be an amount which bears the same ratio to the total benefits paid to the individual as the total base-period wages paid to the individual by such employer bear to the total base-period wages paid to the individual by all of his base-period employers.
*557 The first paragraph of this section states that benefits paid to employees of nonprofit organizations shall be financed in accordance with the provisions of this section.
Paragraph (a) following requires the nonprofit organization to pay to the commission an amount equal to the amount of the regular benefits and one half of the extended benefits paid, that is attributable to the service in the employ of such nonprofit organization.
Paragraphs (c)(i), (ii) provide that reimbursement payments to the commission for unemployment benefits in cases such as these, "... shall be an amount which bears the same ratio to the total benefits paid to the individual as the total base-period wages paid to the individual by such employer bear to the total base-period wages paid to the individual by all of his base-period employers."
In our view it appears clear that the Legislature intended, in such cases as these, that reimbursing employers shall pay to the commission their proportionate share of unemployment benefits based upon the length of time the unemployed worker had worked for the political subdivision in the base-period. To the extent the unemployment benefits are attributable to the worker's period of employment with the political subdivision, the subdivision is obligated to reimburse the commission a commensurate amount of the unemployment benefits paid. There is no exception to this requirement.
Moreover, this view is fortified by subparagraph (b)(iv) above quoted which requires the reimbursement to be on a dollar for dollar basis in every case, and that the payments due by employers who elect to reimburse the fund in lieu of contributions may not be "non-charged" under any condition.
The appellee subdivisions argue that they are excluded from any obligation under the section because the payments paid these unemployed workers were not "due by" the political subdivisions as required in subparagraph (b)(iv). This argument ignores the plain provisions of the remainder of the statute, which requires reimbursement for the benefits paid which are attributable to the period of service while in the employ of the political subdivision.
The law provides the period and amount of unemployment benefits which are authorized to be paid unemployed workers. Such entitlement benefits to the unemployed worker must come from somewhere: (1) the contributing employers, (2) the reimbursing employer, or (3) the general taxpayer. We can glean no legislative intent that it should come from any source other than the reimbursing employer, the political subdivisions. The legislature could not have intended that nonprofit organizations and political subdivisions have a free ride in cases such as these, with the burden of payment shifted elsewhere.
In this interpretation we agree with the courts of Oregon and Georgia. See Mann Home v. Morgan, 19 Or. App. 853, 529 P.2d 964 (1974); Caldwell v. Hospital Authority of Charlton County, 248 Ga. 887, 287 S.E.2d 15 (1982). In the case of Wilmington Medical Center v. Unemployment Insurance Appeal Board, 346 A.2d 181 (Del. Super. Ct. 1975), aff'd, 373 A.2d 204 (Del. 1977), it appears the Superior Court of Delaware, in a factually analogous case, held otherwise, but we note the Delaware statute is not as comprehensive as our Mississippi statutes, and moreover, we believe the view adopted by the Delaware court is not as sound as that of the Oregon and Georgia courts.
The commission has also appealed in two cases in which the circuit court rendered judgment for the political subdivisions where the commission had erroneously paid benefits to unemployed workers.[3] The commission seeks to secure judicial approval of liability to a political subdivision for unemployment benefits paid an unemployed worker where none were due, arguing the political subdivisions by the terms of § 71-5-357 *558 are not excepted from a duty to reimburse the fund even under these conditions. Although the commission cites cases from other jurisdictions supporting this view, we reject such an argument. We can see no requirement by statute or common sense which would require a nonprofit organization or a political subdivision to pay for mistakes made by the commission.
We, therefore, affirm the circuit court judgment in those cases wherein unemployment benefits which were not due under the law were paid by the commission to workers. As to all remaining cases we reverse and render judgment here in favor of the commission.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.
PATTERSON, C.J., SUGG and WALKER, P.JJ., and BROOM, ROY NOBLE LEE, and PRATHER, JJ., concur.
BOWLING and DAN M. LEE, JJ., took no part.

NOTES
[1] No. 53,408  Mississippi Employment Security Commission v. City of Columbus Light and Water Department; No. 53,410  Mississippi Employment Security Commission v. City of Columbus Light and Water Department; No. 53,411  Mississippi Employment Security Commission v. Bolivar County, Mississippi; No. 53,412  Mississippi Employment Security Commission v. Board of Education of Bolivar County, Mississippi; No. 53,413  Mississippi Employment Security Commission v. City of Columbus Light and Water Department; No. 53,414  Mississippi Employment Security Commission v. City of Columbus Light and Water Department; No. 53,415  Mississippi Employment Security Commission v. Town of New Houlka, Mississippi; No. 53,416  Mississippi Employment Security Commission v. Chickasaw County, Mississippi; No. 53,417  Mississippi Employment Security Commission v. Board of Education of Bolivar County; and No. 53,418  Mississippi Employment Security Commission v. City of Columbus Light and Water Department.
[2] § 71-5-359 makes the provisions of § 71-5-357 quoted herein applicable to state boards, instrumentalities, and political subdivisions.

While not involved in the cases before us, we observe the Legislature in 1982 amended § 71-5-357 to authorize another method for nonprofit organizations to contribute. See 1982 Laws ch. 480, section 1, par. (b)(iv).
[3] No. 53,508  Mississippi Employment Security Commission v. Lauderdale County Board of Education; and No. 53,630  Mississippi Employment Security Commission v. Chickasaw County, Mississippi.