S96A1507. ECKLES d/b/a ATLANTA TECHNOLOGY GROUP
v. ATLANTA TECHNOLOGY GROUP, INC.
(485 SE2d 22)

CARLEY, Justice.

In 1990, Andrew Jackson Eckles began operating a sole proprietorship under the unregistered trade name "Atlanta Technology

Group" ("ATG"). In the years that followed, Eckles devoted all of his time and resources to the development of his business, which has continuously used the trade name "ATG." In May 1994, Eckles received several telephone calls from confused customers who informed him that Atlanta Technology Group, Inc. (ATGI), which had been incorporated in Delaware in 1993, also was using the trade name "ATG." Concerned about the likelihood of name confusion and its undesirable consequences, Eckles contacted an officer of ATGI and informed him that ATGI was infringing on his trade name. When Eckles was unsuccessful in his efforts to reach a compromise, he filed this action seeking an interlocutory and permanent injunction prohibiting ATGI from using "ATG" for trade or business purposes. After conducting a hearing, the trial court entered an order holding that ATGI's use of the trade name "ATG" did not infringe upon Eckles' use thereof. From that order, Eckles brings this appeal.

1. As a general rule, geographical names and descriptive words are incapable of appropriation as a trade name. *Womble v. Parker*, 208 Ga. 378 (1) (67 SE2d 133) (1951). However, when a business entity's use of such words causes the public to understand that the goods or services of that business entity are designated thereby, then those words do acquire a secondary meaning which is protected under the law. *Future Professionals v. Darby*, 266 Ga. 690, 692 (3) (470 SE2d 644) (1996); *Giant Mart Corp. v. Giant Discount Foods*, 247 Ga. 775, 776 (279 SE2d 683) (1981); *Womble v. Parker*, supra. Under the undisputed evidence of record, Eckles' use of "ATG" over the years has caused that name to become closely associated with his products and services and "ATG" is now understood by the public to designate his products and services. Therefore, it is undisputed that "ATG," although descriptive, has acquired secondary meaning as a trade name pertaining to Eckles' goods and services.

In Georgia, a trade name is protected by the common law and by several statutes. One of those statutes is the Uniform Deceptive Trade Practices Act (UDTPA), which provides protection to a trade name when another's use of the same or similar name "[c]auses [a] likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services." OCGA § 10-1-372 (a) (2). For Eckles to obtain relief under UDTPA, he was not required to show that he suffered monetary damages or that ATGI intended to cause confusion or misunderstanding to the public. OCGA § 10-1-373. Moreover, protection would not be dependent upon Eckles' registration of "ATG" as his trade name, since " 'all that is required (for relief under UDTPA) is that the use of a name cause confusion to others (who are) using reasonable care.' " *Future Professionals v. Darby*, supra at 691 (2). The undisputed evidence of record establishes that ATGI's use of "ATG" has caused confusion and mis-

understanding on the part of the public. On more than one occasion, customers have misdirected their inquiries and legal documents have been misserved. Accordingly, based upon the unrefuted evidence of record, it is clear that Eckles is entitled to injunctive relief under UDTPA and that the trial court's contrary ruling is erroneous and must be reversed.

2. ATGI has been represented in this case by one of its corporate officers who is not a licensed attorney. Because this Court has not previously determined whether it is permissible for a corporation to have as its legal representative an individual who is not licensed to practice law in the courts of this state, we take this occasion to address that issue.

A corporation is a "person." OCGA § 1-3-3 (14). Because it is a "person," a corporation certainly is entitled to receive due process and equal protection from this state. *Caldwell v. Hosp. Auth. of Charlton County*, 248 Ga. 887, 888 (1) (287 SE2d 15) (1982). Art. I, Sec. I, Par. XII of the Ga. Const. of 1983 also provides that "[n]o person shall be deprived of the right to prosecute or defend, either in person or by an attorney, that person's own cause in any of the courts of this state." Accordingly, if a corporation were also a "person" with the capability of representing its "own cause," then that corporate entity could avail itself of this constitutional right to self-representation without regard to its own lack of a license to practice law. However, a corporation is an artificial, not a natural, person. As an artificial person, a corporation "can act, and does act, alone through agents. It deals with other corporations and with natural persons by its agents; it can deal with the world in no other way." *Scofield Rolling Mill Co. v. State of Ga.*, 54 Ga. 635, 639 (1) (1875). For this reason, it has long been recognized by the courts of other jurisdictions that "[a] corporation . . . can appear only by attorney, while a natural person may appear for himself." *Osborn v. United States Bank*, 22 U. S. (9 Wheat.) 738, 830 (6 LE 204) (1824). Not only has this principle long been recognized, it has been almost universally accepted. See Anno., 8 ALR5th 653. Thus, notwithstanding that a corporation is a "person" for the purpose of receiving due process and equal protection from the state, it has been held that a corporation is not a "person" for the purpose of exercising a constitutional right to legal self-representation, since it cannot represent itself and can only be represented by its agents. See *Ex parte Lamberth*, 5 S2d 622 (Ala. 1942). As a very limited exception to this general rule, most states allow a layman to serve as a corporation's legal representative in proceedings before courts which are not of record. See Anno., 8 ALR5th 653, 689, § 5[a]; 9A Fletcher Cyc. Corp., § 4463.20. The rationale for recognizing this exception to the general rule is that those problems which are likely to arise when a layman serves as the legal

representative for a corporation in a proceeding in a court of record are greatly minimized in the more informal setting of a proceeding in a court which is not of record. *Oahu Plumbing &c. v. Kona Constr.*, 590 P2d 570, 575 (Haw. 1979).

Even though the principle that a corporation must have a licensed attorney as its legal representative in a proceeding in a court of record has long been recognized and almost universally accepted, there are cases from our Court of Appeals which reach a contrary result. *Universal Scientific v. Wolf*, 165 Ga. App. 752 (302 SE2d 616) (1983); *Knickerbocker Tax Systems v. Texaco, Inc.*, 130 Ga. App. 383 (203 SE2d 290) (1973); *Dixon v. Reliable Loans*, 112 Ga. App. 618 (145 SE2d 771) (1965). However, all of these Court of Appeals cases are based upon statutory provisions. Contrary to the rationale of these cases, no statute is controlling as to the civil regulation of the practice of law in this state. Only this Court has the inherent power to govern the practice of law in Georgia. It is the creation and regulation of the State Bar of Georgia, through the decisions and orders of this Court, that now constitute "the exclusive means of governing the practice of law in Georgia." *Huber v. State*, 234 Ga. 357, 359 (216 SE2d 73) (1975). Thus, in *Huber v. State*, supra at 360, we specifically held that Ga. L. 1931, p. 191, as amended, which includes provisions such as OCGA § 15-19-52, "no longer controls the practice of law in Georgia. . . ." When a legislative enactment relating to admission to the practice of law conflicts with rules for admission adopted or approved by the judiciary, "the legislative enactment must give way." *Merco Constr. Engineers v. Municipal Court*, 581 P2d 636, 638 (Cal. 1978). See also *State v. Bartholomew County Court*, 383 NE2d 290, 292 (Ind. 1978). Accordingly, insofar as the Court of Appeals cases rely upon statutes, rather than decisions and orders of this Court, as authority for a corporation's right to legal representation by a layman in a court of record, those cases cannot constitute viable authority for that proposition.

The qualifications of the individual "representing a corporation . . . in court is one of vital judicial concern. Such person is clearly engaged in the practice of law in a representative capacity." *Merco Constr. Engineers v. Municipal Court*, supra at 639. Thus, it is clear that permitting a corporation to be represented by a layman in a court of record would constitute a major exception to the requirement that a legal representative be a licensed attorney who is subject to the authority of the courts of which he or she is an officer. Indeed, there appears to be no reason why the prohibition against legal representation by a layman in a court of record should not apply when the party represented is a corporation rather than a natural person. Natural persons with no license to practice law are not permitted to act as "attorneys" and represent other natural persons in their legal

affairs. Likewise, "non-attorney agents are not allowed to represent corporations in litigation, for a wholly unintended exception to the rules against unauthorized practice of law would otherwise result." *Oahu Plumbing &c. v. Kona Constr.,* supra at 573-574. Having accepted the benefits of incorporation, a corporation must also accept the burdens, "including the need to hire counsel to sue or defend in court. [Cits.] Thus, the requirement that a corporation appear through an attorney in no way deprives it of due process. [Cit.]" *Woodford Mfg. Co. v. A.O.Q., Inc.,* 772 P2d 652, 654 (Colo. App. 1988).

> It is the responsibility of this court to provide effective standards for admission to the practice of law and for the discipline of those admitted to practice. Litigation must be projected through the courts according to established practice by lawyers who are of high character, skilled in the profession, dedicated to the interest of their clients, and in the spirit of public service. In the orderly process of the administration of justice, any retreat from those principles would be a disservice to the public. To allow a corporation to maintain litigation and appear in court represented by corporate officers or agents only would lay open the gates to the practice of law for entry to those corporate officers or agents who have not been qualified to practice law and who are not amenable to the general discipline of the court.

*Union Savings Assn. v. Home Owners Aid,* 262 NE2d 558, 561 (Ohio 1970). " 'The right to practice law is not a natural or constitutional right, nor an absolute right or a right de jure, but is a privilege or franchise.' " *Sams v. Olah,* 225 Ga. 497, 504 (7) (169 SE2d 790) (1969). An attorney is an officer of the court and, as such, has a responsibility to the courts and to the public which is no less significant than the obligation he owes to his clients. " 'The office of attorney is indispensable to the administration of justice and is intimate and peculiar in its relation to, and vital to the well-being of, the court.' [Cit.]" *Gordon v. Clinkscales,* 215 Ga. 843, 846 (2) (114 SE2d 15) (1960).

As the overwhelming majority of other jurisdictions have found, we conclude that allowing laymen to serve as unlicensed attorneys for corporations in courts of record would be contrary to the public interest and, in the exercise of our inherent power over the practice of law in this state, we hereby prohibit such representation. In this state, only a licensed attorney is authorized to represent a corporation in a proceeding in a court of record, including any proceeding that may be transferred to a court of record from a court not of record. See *Varney Enterprises v. WMF, Inc.,* 520 NE2d 1312, 1314

(Mass. 1988). By so holding, we necessarily overrule *Universal Scientific v. Wolf*, supra, *Knickerbocker Tax Systems v. Texaco, Inc.*, supra, *Dixie v. Reliable Loans*, supra, and any other case which authorizes laymen to provide legal representation to corporations in courts of record. However, because our holding not only is predicated upon overruling those cases, but also represents an issue of first impression for this court which heretofore was not clearly foreshadowed, we further conclude that our holding should have prospective effect only. See *Federated Mut. Ins. Co. v. DeKalb County*, 255 Ga. 522 (341 SE2d 3) (1986). We are free to "choose any relevant date in the interest of justice. [Cits.]" *Strickland v. Newton County*, 244 Ga. 54, 55 (1) (258 SE2d 132) (1979). In the interest of justice, we limit the applicability of our holding to those civil actions instituted in or transferred to courts of record on and after the date that this opinion appears in the advance sheets and to those appeals filed in civil actions on or after that date. See *Renner v. State*, 260 Ga. 515, 518 (3) (b), fn. 2 (397 SE2d 683) (1990); *Brown v. State*, 247 Ga. 298, 299 (275 SE2d 52) (1981), overruled on other grounds, *Wilson v. Zant*, 249 Ga. 373, 380 (2) (290 SE2d 442) (1982).

We emphasize that our holding is applicable to corporate representation only and that all non-corporate business owners are completely unaffected thereby. A business owner contemplating incorporation has always been required to weigh the benefits thereof against the countervailing burdens. As has been true in the vast majority of other states, the need to hire counsel to sue and defend in a court of record is a factor which now must enter into a Georgia business owner's determination as to whether to incorporate. Each "person" in this state is entitled to legal self-representation, but no "person" in this state is entitled to legal representation from a layman. A layman who is representing a corporation in a legal matter is in no sense representing himself, but is acting as the legal representative of another "person" entirely. A layman's legal representation in a court of record of another "person" in the form of a separate corporate entity is all that is proscribed by our holding today.

*Judgment reversed. All the Justices concur, except Sears, J., who concurs specially.*

SEARS, Justice, concurring specially.

I commend the majority's foresight in recognizing that a per se prohibition against pro se appearances by corporations is not necessary in certain tribunals, and might, in fact, impose undue hardships. By permitting lay persons to serve as a corporation's legal representative in courts not of record, the majority has prudently allowed corporations to be represented by non-lawyers in forums which include, among others: (1) the magistrate courts which are

required to exist in every county of this state;[1] (2) administrative tribunals;[2] and (3) most city and municipal courts.[3] I believe it possible, however, that extraordinary circumstances could warrant permitting a corporation to appear pro se in a court of record. On such rare occasions and upon proper application, I would permit trial judges, in the exercise of their wise discretion, to consider whether the circumstances are so exceptional that they justify allowing a pro se corporate appearance.

## ON MOTION FOR RECONSIDERATION.

On motion for reconsideration, the Attorney General has filed an amicus brief, in which he urges that,

> in the context of this case, this Court erred in invalidating OCGA § 15-19-52, which embodies the public policy of this state, in the absence of a case or controversy, and without notice to the Attorney General.

It is well settled that this Court will not pass upon the constitutionality of a statute where no justiciable case or controversy is presented and that, in a case wherein the constitutionality of a statute is called into question, the Attorney General must be served and heard. *St. John's Melkite Catholic Church v. Commr. of Revenue*, 240 Ga. 733, 734 (1) (242 SE2d 108) (1978); OCGA § 9-4-7 (c). However, in this case, we have not held that OCGA § 15-19-52 is unconstitutional. To the contrary, we have reiterated only what was held more than 20 years ago, when, in *Huber v. State*, 234 Ga. 357, 360 (216 SE2d 73) (1975), this Court ruled that OCGA § 15-19-52, "as amended, no longer controls the practice of law in Georgia. . . ." This holding in *Huber* likewise was not predicated upon the unconstitutionality of OCGA § 15-19-52. *Huber*, supra at 359, merely held that OCGA § 15-19-52

> predates by many years the action taken by the General Assembly in 1963 proposing the creation of the State Bar of Georgia ([cit.]); the order of this court entered December 6, 1963, creating and organizing the State Bar of Georgia ([cit.]); and, the cases of *Wallace v. Wallace*, 225 Ga. 102 (166

---

[1] See *Bowen v. Ball*, 215 Ga. App. 640, 642 (451 SE2d 502) (1994); OCGA § 15-10-1 (1994).

[2] See *State Bd. of Dental Examiners v. Daniels*, 137 Ga. App. 706, 709 (224 SE2d 820) (1976).

[3] See generally *Bowen*, 215 Ga. App. at 641 (defining what is considered a "court of record").

> SE2d 718), and *Sams v. Olah*, 225 Ga. 497 (169 SE2d 790), decided by this court in 1969. In these two cases, this court unconditionally asserted its inherent power to govern the practice of law in this state. . . . We see that the creation and regulation of the State Bar of Georgia, through the decisions and orders of this court, now constitute the exclusive means of governing the practice of law in Georgia.

Thus, in 1963, the General Assembly itself proposed the creation of a State Bar and, by doing so,

> recognized that the creation of a unified state bar was properly a judicial function for the highest court in our judicial department. The [1963] Act manifests that body's approval, in the public interest, of the creation of a unified state bar, but leaves the creation, organization and government of it to this court.

*Wallace v. Wallace*, supra at 112 (3) (a). Therefore, OCGA § 15-19-52 is not and was not unconstitutional, but merely was obviated by the subsequent creation of the State Bar of Georgia as an administrative arm of this Court.

> Because of the vital role of the legal profession in the administration of justice, it was a proper exercise of State power, proposed by the legislative department, and activated by the judiciary, to create a State Bar for the purpose of "maintaining high standards of conduct in the legal profession and . . . aiding in the efficient administration of justice." [Cit.]

*Sams v. Olah*, supra at 504 (7).

Obviously, there is a significant distinction between holding a statute to be unconstitutional and holding a statute to be obviated by subsequent controlling authority.

> The purpose of the State Bar Act was to initiate the creation of the State Bar of Georgia. It eliminated any conflicting claims of coordinate branches of government to such power. Its adoption encouraged the court to exercise its inherent power in this regard. In response thereto, but in the exercise of an inherent judicial function, the Supreme Court acted and the State Bar of Georgia was created.

*Sams v. Olah*, supra at 506-507 (10). It is beyond dispute that the regulation of the practice of law in this state is a matter exclusively within this Court's inherent power. The fact that, in the past, the

General Assembly has enacted laws relating to the practice of law does not

> indicate that such is a legislative function. This court's recognition of such legislative enactments . . . does not mean that this court intended to, or even could relinquish this judicial responsibility to the legislature. On the contrary, this court has stated that the judiciary cannot be circumscribed or restricted in the performance of its power and duty to regulate the practice of law and has made it plain that it considers such legislation to be "in aid of the judiciary in the performance of its functions." [Cit.]

*Wallace v. Wallace*, supra at 111-112 (3) (a). Because the issue in this case is one which comes within this Court's inherent power to regulate the practice of law in this state, and does not relate to the constitutionality of OCGA § 15-19-52, the motion for reconsideration is denied.

*All the Justices concur.*

DECIDED APRIL 4, 1997 —
RECONSIDERATION DENIED APRIL 4, 1997.

*Womble, Carlyle, Sandridge & Rice, Sonya Y. Ragland, Kirk W. Watkins, Everett W. Gee III,* for appellant.
*Deborah L. Britt,* for appellee.
*Michael J. Bowers, Attorney General, Michael E. Hobbs, Counsel to Attorney General, Daryl A. Robinson, Deputy Counsel to Attorney General, Glass, McCullough, Sherrill & Harrold, John A. Sherrill, Bryan A. Downs, Sheri M. Rosenthal,* amici curiae.