317 Ga. 182
FINAL COPY

S23Q0486.  HOSPITAL AUTHORITY OF WAYNE COUNTY v.
AMERISOURCEBERGEN DRUG CORPORATION et al.

MᴄMɪʟʟɪᴀɴ, Justice.

The United States District Court for the Northern District of Ohio (the "District Court") has certified two questions to this Court regarding whether a state entity can continue asserting claims against opioid manufacturers and distributors after the State of Georgia entered into a settlement with the pharmaceutical companies, and as part of the settlement, the General Assembly enacted OCGA § 10-13B-1 et seq. (the "Settlement Act") in 2022, which includes a litigation preemption provision that "bar[s] any and all past, present or future claims on behalf of any governmental entity seeking to recover against any business or person that is a released entity under the terms of the relevant settlement." OCGA § 10-13B-3 (a) (the "preemption provision").

On April 16, 2019, before Georgia entered into the state-wide

settlement with the pharmaceutical companies, the Hospital Authority of Wayne County, Georgia ("HAWC") filed suit against a number of such entities, seeking to recover unreimbursed amounts it claims to have expended in treating opioid-dependent patients. See *Hosp. Auth. of Wayne County, Ga. v. Purdue Pharma, L.P. et al.*, Case No. 1:19-OP-45278 (N.D. Ohio). HAWC subsequently chose not to participate in the state-wide settlement and has not individually released any of its claims. At some point, HAWC's litigation was consolidated, along with over 3,000 other cases, into a federal multidistrict litigation in the District Court. See *In re Nat. Prescription Opiate Litigation* (MDL No. 2804).

On October 12, 2022, seven defendants named in HAWC's complaint filed a motion to dismiss HAWC's claims against them (the "Motion"), contending that the suit is barred by the preemption provision.[1]  HAWC opposed the Motion, arguing that the Settlement

---

[1] The Motion identifies the movants as Johnson & Johnson, Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc., AmerisourceBergen Corporation, McKesson Corporation, and Cardinal Health, Inc., "as well as any other Released Entities, as that term

Act, and in particular, the preemption provision, is unconstitutional because it takes away HAWC's right to pursue its already-filed lawsuit and thus violates the Georgia Constitution's prohibition against retroactive laws. See Ga. Const. of 1983, Art. I, Sec. I, Par. X ("Paragraph X").[2] As required by Fed. Rule Civ. P. 5.1,[3] HAWC served a copy of its opposition brief on the Attorney General for the State of Georgia, and the District Court invited the Attorney General to intervene in the proceedings on the motion. The Attorney General responded by letter, declining to intervene at that time but requesting that the District Court certify two questions to this Court concerning the preemption provision's constitutionality and

---

is defined in the Settlement Agreements, that have been named as defendants in the Complaint." The movants will be referred to collectively herein as the "Settling Defendants."

[2] Although OCGA § 10-13B-3 (b) provides that the preemption provision shall not apply "to a bellwether claim of any governmental entity" that meet certain criteria, the parties agree that HAWC's litigation has not been identified as a bellwether claim for any purpose.

[3] Fed. Rule Civ. P. 5.1 (a) requires that a party who files a pleading "drawing into question the constitutionality of a . . . state statute" must file a notice of the constitutional challenge and serve the notice on the state attorney general. Under Fed. Rule Civ. P. 5.1 (b), the federal court "must, under 28 U.S.C. § 2403, certify to the appropriate attorney general that a statute has been questioned," and the attorney general is given 60 days in which to intervene in the action. See Fed. Rule Civ. P. 5.1 (c).

HAWC's authority to challenge it. The District Court certified the following two questions to this Court by order dated December 27, 2022:

> (1) Does [HAWC] have the legal authority to challenge the constitutionality of OCGA § 10-13B-1 et seq.? and
> (2) Does Article I, Section I, Paragraph X of the Georgia Constitution prohibit [the preemption provision's] bar of past, present and future claims by governmental entities?

1. Turning to the first question, we consider whether HAWC has the legal authority to challenge the preemption provision on the grounds that it violates the bar against retroactive laws in Paragraph X. The preemption provision reads:

> Entry into a state-wide opioid settlement agreement shall serve to bar any and all past, present or future claims on behalf of any governmental entity seeking to recover against any business or person that is a released entity under the terms of the relevant settlement. Such bar shall apply to any and all released claims or suits by any governmental entity created by or pursuant to an Act of the General Assembly, the Constitution, or any department, agency, or authority thereof, for damages, abatement, injunctive or any other relief. No such claim barred by this Code section shall be brought, threatened, asserted or pursued in any way in any court, and any such claim shall be dismissed by the court in which the claim is brought.

4

OCGA § 10-13B-3 (a). In construing this provision, "we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would." *Domingue v. Ford Motor Co.*, 314 Ga. 59, 61 (2) (875 SE2d 720) (2022) (citation and punctuation omitted). "When looking for the commonly understood meaning of a word in statutory text, we generally look to dictionaries and, if relevant, legal dictionaries from the time the statute was passed." *Raffensperger v. Jackson*, 316 Ga. 383, 394 (4) (b) n.14 (888 SE2d 483) (2023).

Here, it is undisputed that HAWC is a "governmental entity" and the Settling Defendants are each considered a "released entity" under the Settlement Act. See OCGA § 10-13B-2 (1) (A) ("Governmental entity" includes "[t]his state and each of its departments, agencies, divisions, boards, commissions, authorities, and instrumentalities."); OCGA § 10-13B-2 (3) ("'Released entity'

means an entity against which a claim has been released under a state-wide opioid settlement agreement."); OCGA § 31-7-72 (a) ("There is created in and for each county and municipal corporation of the state a public body corporate and politic to be known as the 'hospital authority' of such county or city . . . .").

Given that the parties are covered by the Settlement Act, the text of the preemption provision could not be plainer: *any and all past, present, and future claims* by *any governmental entity* under the Settlement Act are barred. See OCGA § 10-13B-3 (a). This bar applies to "any and all released claims or suits"[4] under the Settlement Act brought "by *any governmental entity created by or pursuant to an Act of the General Assembly*," for damages or any other relief.[5] Id. (emphasis added). And no such barred claims "shall be brought, threatened, asserted or *pursued in any way* in any court." Id. (emphasis added). The Settlement Act was adopted in

---

[4] A "released claim" is defined as "a claim by a governmental entity that has been or could have been released under a state-wide opioid settlement agreement." OCGA § 10-13B-2 (2).

[5] HAWC asserted in its filings in this Court and the District Court that it is seeking to recover damages it suffered as a result of the opioid epidemic.

6

2022, and the plain meaning of "pursue" as defined, for example, in the Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/pursue, includes "to find or employ measures to obtain or accomplish" and "to follow up or proceed with." And in the applicable legal context, the word "pursue" is defined to include "[t]o try persistently to gain or attain" and "[t]o prosecute or sue," using the example "to pursue for damages." Black's Law Dictionary (11th ed. 2019) (second and sixth definitions of "pursue"). HAWC's opposition to the Motion is part of the authority's persistent effort to sue the Settling Defendants for damages, to gain or attain a ruling on the merits of those claims, and to follow up on the filing of those claims. We thus conclude that HAWC's assertion of its constitutional rights is a way of pursuing such claims and is barred under the text of the preemption provision, unless some legal principle prohibits its application to HAWC.

HAWC acknowledges that as a hospital authority, it was established pursuant to OCGA § 31-7-72 and that its functions and powers are derived from OCGA § 31-7-75. However, HAWC asserts

7

that it has the authority to raise its constitutional challenge to the preemption provision because OCGA § 31-7-75 gives it the power to sue and be sued, see OCGA § 31-7-75 (1), and "[t]o exercise any or all powers now or hereafter possessed by private corporations performing similar functions," see OCGA § 31-7-75 (21). Therefore, HAWC contends that while a county or city generally may not have the legal authority to assert a constitutional challenge to an act of the legislature,[6] a hospital authority does, see *Caldwell v. Hosp.*

---

[6] This Court has recognized that, "[a] public entity created by the legislature generally cannot bring constitutional challenges to legislative acts," *Ga. Insurers Insolvency Pool v. Hulsey Environmental Svcs., Inc.*, 293 Ga. 504, 505 (748 SE2d 380) (2013), and thus, for example, "[a] county or municipal corporation, created by the legislature, does not have standing to invoke the equal protection and due process clauses of the [s]tate or [f]ederal Constitution in opposition to the will of its creator." *City of Atlanta v. Spence*, 242 Ga. 194, 195 (1) (249 SE2d 554) (1978). See also *City of Columbus v. Ga. Dept. of Transp.*, 292 Ga. 878, 882 n.1 (742 SE2d 728) (2013) (municipality had no authority to pursue a due process claim); *Bibb County v. Hancock*, 211 Ga. 429, 440-41 (3) (86 SE2d 511) (1955) ("Neither counties nor municipal corporations . . . [are] persons as against the State within the meaning of the constitutional provision guaranteeing due process to all persons."); *V. C. Ellington Co. v. City of Macon*, 177 Ga. 541, 544 (170 SE 813) (1933) ("[A] municipal corporation, created by a [s]tate for the better ordering of government, has no privileges or immunities under the [federal or state] constitution which it may invoke in opposition to the will of its creator." (citation and punctuation omitted)). However, this Court also stated in *Spence* that "[t]his does not mean that the city [or county] does not have standing to raise other constitutional questions concerning the statute attacked by them." 242 Ga. at 196 (1). Because we

*Auth. of Charlton County*, 248 Ga. 887 (287 SE2d 15) (1982), and that the General Assembly is prevented from subsequently passing legislation taking away that authority under OCGA § 31-7-96, which provides that "insofar as this article may be inconsistent with any other law, whether by charter of any political subdivision of the state or otherwise, this article shall be controlling."[7]

We do not see *Caldwell* as dispositive here. In *Caldwell*, the Employment Security Agency of the Department of Labor determined that the hospital authority was required to reimburse the agency for a portion of unemployment benefits paid to a former employee. The hospital authority appealed to the superior court, which held that applying certain provisions of Georgia's employment securities laws to the hospital authority would result

resolve the question of HAWC's authority to challenge the preemption provision based on the Settlement Act's specific provisions governing governmental entities, we need not decide whether as a general matter, state-established entities such as hospital authorities may bring a constitutional challenge under Paragraph X to legislative acts.

[7] However, at oral argument, HAWC conceded that the General Assembly could have amended OCGA § 31-7-75 and taken away its authority to pursue the lawsuit, but argued that the General Assembly could not pass another statute that would accomplish the same thing because that would violate OCGA § 31-7-96.

in a violation of due process. See *Caldwell*, 248 Ga. at 888 (1). Relying on an earlier version of OCGA § 31-7-75 (21),[8] granting a hospital authority the powers possessed by private corporations performing similar functions, this Court held that because a private corporation could bring a constitutional challenge against a statute, the hospital authority in that case "ha[d] been granted standing by statute to attack the Employment Security Law on the grounds that it violates the due process and equal protection clauses of the Georgia Constitution." Id.[9] See also *Hulsey Environmental*, 293 Ga. at 505-06 (stating that this Court has "recognized an exception" to the general rule that counties and municipal corporations cannot challenge legislative acts "when the legislature explicitly endows a public entity with power 'possessed by private corporations

---

[8] Former Ga. Code Ann. § 88-1805 (s) authorized hospital authorities "to exercise any or all power now or hereafter possessed by private corporations performing similar functions." See *Caldwell*, 248 Ga. at 888 (1).

[9] Some of the Justices question whether this Court correctly concluded that granting a hospital authority the same powers possessed by private corporations means that they are also considered persons with rights to due process and equal protection, as *Caldwell* held, but we do not need to resolve that issue here in order to respond to the questions certified by the District Court.

performing similar functions'") (quoting *Caldwell*, 248 Ga. at 888 (1)).[10] Thus, *Caldwell*'s conclusion that the hospital authority could assert due process and equal protection challenges to a state statute was based solely on the statutory authority given to the authority under OCGA § 31-7-75.

But *Caldwell* does not address the principle that as a governmental entity created by the state legislature, a hospital authority has "no inherent power; it may only exercise power to the extent it has been delegated authority by the state." *H. G. Brown Family Ltd. Partnership v. City of Villa Rica*, 278 Ga. 819, 819 (1)

---

[10] We note that although *Hulsey Environmental* acknowledged the holding in *Caldwell*, it did not follow *Caldwell*, but rather distinguished it. The Court determined that "the legislature did not give GIIP [the Georgia Insurers Insolvency Pool] the broad powers possessed by private corporations." *Hulsey*, 293 Ga. at 506 (citation and punctuation omitted). On the contrary, this Court determined that "the power to sue and be sued was given only to enable GIIP to bring and defend legal actions pertaining to its statutory functions and duties." Id.; OCGA § 33-36-6 (a) ("[GIIP] is a nonprofit legal entity with the right to bring and defend actions and such right to bring and defend actions includes the power and right to intervene as a party before any court in this state that has jurisdiction over an insolvent insurer as defined in this chapter."). Therefore, the Court held that GIIP lacked standing to bring its constitutional challenge. Compare *Jekyll Island-State Park Auth. v. Jekyll Island Citizens Assn.*, 266 Ga. 152, 152 (1) (464 SE2d 808) (1996) (citing *Caldwell* and holding, without analysis, that the authority had standing to bring a vagueness challenge to a statute).

11

(607 SE2d 883) (2005) (analyzing the powers of a municipality). See *Koehler v. Massell*, 229 Ga. 359, 361-62 (3) (191 SE2d 830) (1972) ("[C]reatures of the legislature . . . possess only such powers as are expressly delegated to them by the legislature. They possess no inherent powers."); *Cox Enterprises, Inc. v. Carroll City/County Hosp. Auth.*, 247 Ga. 39, 43-46 (273 SE2d 841) (1981) (determining that a hospital authority is a governmental entity); *McLucas v. State Bridge Bldg. Auth.*, 210 Ga. 1, 6 (1) (77 SE2d 531) (1953) (state authority is "a mere creature of the State"). And the legislature retains the authority to expand, diminish, or withdraw the powers granted to such an entity. See *Signa Dev. Corp. v. Fayette County*, 259 Ga. 11, 12 (2) (375 SE2d 839) (1989) (For entities that "are creatures of the legislature, . . . their existence may be established, altered, amended, enlarged or diminished, or utterly abolished by the legislature.") (citation and punctuation omitted); *Town of McIntyre v. Scott*, 191 Ga. 473, 475 (4) (12 SE2d 883) (1941) ("[C]ities and towns in their governmental powers are creatures of the legislature, and such powers are subject to change from time to time

at the will of their creator."); *Hogg v. City of Rome*, 189 Ga. 298, 303-04 (3) (6 SE2d 48) (1939) (A city "is a creature of the legislature, and its powers may be enlarged or diminished from time to time, at the will of its creator."); *Churchill v. Walker*, 68 Ga. 681, 686 (1882) (Because a city is a "creature of the general assembly[, t]hat creative power may dissolve, modify, or limit its corporate powers at will.").

Moreover, to the extent that OCGA § 31-7-75 and the preemption provision could be read as conflicting, the canons of statutory construction dictate that the more recent and specific provisions of the Settlement Act govern over the older and more general provisions of OCGA § 31-7-75. See *Bellsouth Telecommunications, LLC v. Cobb County*, 305 Ga. 144, 151 (1) (824 SE2d 233) (2019) ("Where two statutes are in conflict the later-enacted statute prevails over the one enacted earlier, and the more specific statute governs over the more general one."). Despite HAWC's reliance on OCGA § 31-7-96, that provision does not prevent the General Assembly from later passing the Settlement Act and limiting or eliminating HAWC's power to pursue certain legal

claims under the General Assembly's authority to delegate to or take away power from a state entity. And the General Assembly made plain its intent that the Settlement Act was to alter previously passed legislation in Section 3 of the Act as enacted, which provides that "[a]ll laws and parts of laws in conflict with this Act are repealed." Ga. L. 2022, p. 178, § 3. Thus, we conclude that the General Assembly's passage of the preemption provision took away any power HAWC otherwise may have had under OCGA § 31-7-75 to pursue claims that the preemption provision and the Settlement Act are unconstitutional, and the answer to the first question certified by the District Court is no.[11]

2. In light of our answer to the first certified question, we need not answer the second certified question.

*Certified questions answered. All the Justices concur, except Boggs, C. J., not participating and Pinson, J., disqualified.*

---

[11] Our holding in this case is limited to the preemption provision's application to governmental entities as defined by the Settlement Act, as that is the question before us.

Decided August 21, 2023.

Certified questions from the United States District Court for the Northern District of Ohio.

*Smith Phelps & Murray, Robert B. Smith*, for appellant.

*Troutman Pepper Hamilton Sanders, Harold D. Melton; Miller & Martin, Eileen H. Rumfelt, Elizabeth J. Marquardt, Robert F. Parsley; Reed Smith, Robert A. Nicholas, Shannon E. McClure; Williams & Connolly, Enu A. Maingi, Jennifer G. Wright, Steven Pyser, Ashley Hardin; Baker & Hostetler, Jacqueline T. Menk; Wachtell Lipton Rosen & Katz, Yosef G. Schaffel, Elaine P. Golin; Nelson Mullins Riley & Scarborough, Elizabeth C. Helm; O'Melveny & Myers, Charles C. Lifland; Hunter Maclean Exley & Dunn, Randall A. Jordan, Christopher R. Jordan; Covington & Burling, Geoffrey E. Hobart, Mark H. Lynch, Christian J. Pistilli*, for appellees.

*Christopher M. Carr, Attorney General, W. Wright Banks, Jr., Deputy Attorney General, Wayne R. Beckerman, Assistant Attorney General, Stephen J. Petrany, Solicitor-General, Ross W. Bergethon,*

*Deputy Solicitor-General*, amici curiae.