S12A0315. ELLIS v. JOHNSON et al.

(728 SE2d 200)

NAHMIAS, Justice.

Appellant Donna Ellis appeals from the probate court's ruling that OCGA § 15-9-120 (2) is not a special law in violation of Article III, Section VI, Paragraph IV (a) of the 1983 Georgia Constitution. We affirm.

1. On June 22, 2009, Appellant filed a petition in the Probate Court of Dougherty County to probate a will of Hubert Johnson executed on May 28, 2009. Appellant is the primary beneficiary under

that will, in which the testator describes her as a "friend and neighbor." On July 22, 2009, Appellee Henry Johnson, the decedent's son and sole heir, filed a caveat. On October 16, 2009, Appellee Kendall Hash, the decedent's great niece, moved to intervene on the ground that the decedent had named her the primary beneficiary in a June 30, 2008, will. On February 10, 2011, the probate court granted Hash's motion to intervene.

The following day, Hash filed a demand for jury trial under OCGA § 15-9-121 (a), which grants the right to a jury trial in a "probate court" that meets the requirements set forth in OCGA § 15-9-120 (2). At that time, "[p]robate court" was defined in OCGA § 15-9-120 (2) as

> a probate court of a county having a population of more than 96,000 persons according to the United States decennial census of 1990 or any future such census in which the judge thereof has been admitted to the practice of law for at least seven years.[1]

Appellant objected to Hash's jury demand on the ground that it was untimely, but on March 4, 2011, the probate court granted the demand.

However, the probate court later asked the parties to address whether it continued to have jurisdiction to hold jury trials in light of the 2010 decennial census, which showed that Dougherty County's population had dropped below 96,000 (to 94,565). In response, Appellant argued that OCGA § 15-9-120 (2) does permit the probate court to continue to hold jury trials even though Dougherty County has fallen below the population threshold but, because it does so, the statute is an unconstitutional special law. The probate court also construed OCGA § 15-9-120 (2) to say that once a county in which a probate court is located attains the population threshold set by the statute, the probate court will continue to have jurisdiction to hold jury trials even if the county's population drops below the threshold in a future decennial census. But so construed, the probate court ruled, OCGA § 15-9-120 (2) is still not an unconstitutional special law.

---

[1] It is undisputed that the probate judge in this case meets this practice requirement. In addition to there being a right to a jury trial in this class of probate court, the probate court's decision may be appealed straight to an appellate court. See OCGA § 15-9-123 (a). By contrast, in probate courts that do not meet the population threshold, there are no jury trials and the probate court's decision may be appealed to the superior court for a de novo proceeding, which may include a jury trial, followed by a potential appeal to an appellate court. See OCGA §§ 5-3-2 and 5-3-20.

After the probate court certified the case for immediate review, we granted Appellant's application for interlocutory appeal.

2. Appellant suggests that the constitutional issue she raises is moot because of OCGA § 1-3-1 (d) (2) (D), which provides that the 2010 decennial census will not become effective for purposes of OCGA § 15-9-120 (2) until July 1, 2012.[2] However, Appellant's complaint is that OCGA § 15-9-120 (2) is a special law, a contention which, if true, would mean that OCGA § 15-9-120 (2) was never a valid law, regardless of what counties may come within its terms when the 2010 census takes effect. See *City of Atlanta v. Gower*, 216 Ga. 368, 372 (116 SE2d 738) (1960). If appellant is correct that the statute is unconstitutional, then the Dougherty County Probate Court could not hold jury trials in any case, including this one, before or after July 1, 2012. Thus, the constitutional issue presented is not moot, and we will proceed to consider it on the merits. See *Scarbrough Group v. Worley*, 290 Ga. 234, 236 (719 SE2d 430) (2011).

3. Appellant argues that OCGA § 15-9-120 (2) is an unconstitutional "special law." Article III, Section VI, Paragraph IV (a) of the 1983 Georgia Constitution provides:

> Laws of a general nature shall have uniform operation throughout this state and no local or special law shall be enacted in any case for which provision has been made by an existing general law, except that the General Assembly may by general law authorize local governments by local ordinance or resolution to exercise police powers which do not conflict with general laws.

We have explained that a statute that defines its applicability by the population of counties or other governmental units, like OCGA § 15-9-120 (2), must meet three requirements to be considered a constitutional general law rather than an unconstitutional special law:

> 1. The statute "must not only be open to let in counties later falling within the class, but must be open to let out a county that by increase or decrease according to the last census ceases to have the required population, so as not to freeze a county within the original population restriction."

---

[2] Appellant says she learned of OCGA § 1-3-1 (d) (2) (D) only after this Court granted the interlocutory appeal.

2. The population classification "must not be so hedged about and restricted as to apply to only one county, so that others coming within the class provided cannot also come within the purview of the statute."

3. "[T]he classification by population must have some reasonable relation to the subject matter of the statute and a legitimate ground for differentiation."

*Dougherty County v. Bush*, 227 Ga. 137, 138 (179 SE2d 343) (1971) (citations omitted).

The latter two requirements are not seriously contested in this case. OCGA § 15-9-120 (2) is not so hedged and restricted as to apply to only one county. To the contrary, its population threshold applied to Georgia's ten largest counties under the 1990 census, and it will apply to 27 counties when the 2010 census takes effect. Compare *City of Atlanta*, 216 Ga. at 372. And the parties agree that the statute has a rational basis. As the probate court explained, OCGA § 15-9-120 (2) eliminates the two-tiered lower court procedure (a probate court ruling followed by a de novo appeal to the superior court) "in those counties which are most heavily populated and consequently, administer the most estates"; the requirement that probate judges be lawyers who have practiced for seven years (the same qualification as superior court judges, see OCGA § 15-6-4) ensures that the right to a jury trial will be "adequately protected in those counties"; and the availability of jury trials and the provision for appeal straight to an appellate court under OCGA § 15-9-123 (a) "conserves judicial resources, expedites resolution of cases, and serves to reduce litigation expenses."

Appellant instead focuses on the first requirement of a general law, arguing — as the probate court held — that once a county meets the population threshold in OCGA § 15-9-120 (2), it remains covered by the statute forever. Thus, Appellant contends, the statute impermissibly "freeze[s] a county within the original population restriction." *Dougherty County*, 227 Ga. at 138. However, for more than 70 years, this Court has held that when a statutory classification is based on a county's having a specified population under a particular census *or* any future census, the use of the disjunctive "or" creates the required elasticity, setting a starting population but then permitting counties to move into or fall out of the class based on the latest census. See *Sumter County v. Allen*, 193 Ga. 171, 175-176 (17 SE2d 567) (1941).

In *Sumter County*, the Court acknowledged that such statutory language might grammatically be read to the contrary, leaving a county in the class if it qualified under the original census but not under a subsequent census. See id. But applying the canon that "if a

statute is reasonably susceptible of two constructions, one harmonizing it with the constitution and the other rendering it unconstitutional, the former construction is generally to be preferred," id. at 174, we declined to adopt that reading because it would render such a statute an unconstitutional special law. See id. at 175-176.

> If classification should be thus fixed unchangeably by the particular census, the county or counties might as well have been specified by name, since they could be readily identified by such description, and would be hedged thereby. Any such construction would render the act special, and repugnant to the constitutional provision . . . . Since it should be presumed, prima facie, that no such unconstitutional result was intended by the lawmaking body, and an intention to that effect does not clearly appear, the necessary conclusion is that the purpose of this statute was to classify counties, not according to any particular Federal census, but simply by the last preceding census, at any given time.

Id. at 176 (citations omitted).

The rationale of *Sumter County* has been followed in numerous cases holding that statutes defining their applicability by a governmental unit's population in an original "or" subsequent census are permissible general laws. See, e.g., *Building Authority of Fulton County v. State of Ga.*, 253 Ga. 242, 243 (321 SE2d 97) (1984); *Gordon v. Green*, 228 Ga. 505, 510 (186 SE2d 719) (1972); *Commrs. &c. of Fulton County v. Davis*, 213 Ga. 792, 795-796 (102 SE2d 180) (1958); *Estes v. Jones*, 203 Ga. 686, 689 (48 SE2d 99) (1948). Moreover, we have held that similar statutes that instead used the conjunctive "and" — classifying in terms of a specified population under a particular census *and* any future census — freeze the counties within the class, making such statutes unconstitutional special laws. See, e.g., *Walden v. Owens*, 211 Ga. 884, 884-885 (89 SE2d 492) (1955); *Tift v. Bush*, 209 Ga. 769, 771-772 (75 SE2d 805) (1953).

In accordance with our longstanding interpretation of similar statutes, and contrary to the probate court's construction, because OCGA § 15-9-120 (2) uses the disjunctive "or," it does not freeze the counties that meet the population threshold authorizing probate court jury trials under the particular census listed but instead allows counties to move into and out of the class depending on their population in subsequent decennial censuses. Indeed, this understanding of how courts will interpret census-based statutory classifications is reflected in the General Assembly's amendments to OCGA § 15-9-120 (2) to prevent counties — and in particular, Dougherty County —

from falling out of the statute due to population declines shown in a later census. Such amendments would be unnecessary if the counties that met the population threshold in the original census were forever "frozen" in.

As first enacted in 1986, the population threshold in OCGA § 15-9-120 (2) was 150,000. See Ga. L. 1986, p. 982, § 6. In a 1988 amendment, the General Assembly dropped the population threshold to 100,000, see Ga. L. 1988, p. 743, § 2; Dougherty County met that threshold under the 1980 census and thus entered the class. In 1990, however, Dougherty County's population had dropped to 96,311, making it the only Georgia county with a population exceeding 100,000 in the 1980 census to fall below that threshold in the 1990 census; Dougherty County was also the only Georgia county with a population between 90,000 and 100,000 in 1990. In 1994, the General Assembly amended OCGA § 15-9-120 (2) to lower the population threshold from 100,000 to 96,000 under the 1990 or any future census, thereby preventing Dougherty County from falling out of the defined class under *Sumter County*. See Ga. L. 1994, p. 1665, § 2. Similarly, this year, after the 2010 census showed that Dougherty County's population had dropped to 94,565, the General Assembly again amended OCGA § 15-9-120 (2) to set the population threshold at 90,000 under the 2010 or any future census. See Ga. L. 2012, p. 683, §§ 3, 4 (2011 Bill Text GA H.B. 534) (signed by the Governor on May 1, 2012 and effective on July 1, 2012).

For these reasons, OCGA § 15-9-120 (2) satisfies the elasticity requirement of a general law, and the probate court therefore erred in construing OCGA § 15-9-120 (2) to mean that a probate court always would have jurisdiction to hold jury trials once its county passed the population threshold, even if the county's population dropped below the threshold in a future census. It also erred in ruling that, so construed, the statute would not be a special law. However, the probate court reached the right result, and so its ruling that OCGA § 15-9-120 (2) is a constitutional general law can be affirmed under the right-for-any-reason doctrine. See *Smith v. Lockridge*, 288 Ga. 180, 183 (702 SE2d 858) (2010).

4. The Dougherty County Probate Court has jurisdiction to hold jury trials until July 1, 2012, because the 2010 census does not become effective for purposes of OCGA § 15-9-120 (2) until that date. See OCGA § 1-3-1 (d) (2) (D). And after July 1, 2012, the probate court will continue to have jurisdiction to hold jury trials, because the 2012 amendment to OCGA § 15-9-120 (2), which will take effect on July 1, dropped the population threshold to 90,000, keeping Dougherty County in the class. See Ga. L. 2012, p. 683, §§ 3, 4. As they will be entitled to a jury trial in probate court before and after July 1, the

parties' arguments regarding whether the right to a jury trial was triggered when the lawsuit was filed or when they start trial are moot. See *Scarbrough Group*, 290 Ga. at 236.

5. Appellant contends that Appellee Hash's demand for a jury trial was untimely. That is incorrect.

OCGA § 15-9-121 (a) provides in relevant part that "[a] *party* to a civil case in the probate court" must file "a written demand for jury trial within 30 days after the filing of the first *pleading* of the *party*" or "the right shall be deemed waived and may not thereafter be asserted." (Emphasis added.) Appellant contends that Hash's motion to intervene should be considered a pleading and that she should be considered a party as of the time she filed that motion on October 16, 2009, because she participated in discovery and allegedly had standing to file a caveat as a matter of right instead of the motion to intervene. Because Hash did not file her demand for jury trial until February 11, 2011, more than 30 days after filing her motion to intervene, the argument goes, she waived her right to a jury trial.

In the probate court, however, Appellant did not object to Hash's becoming a party to this case through her motion to intervene and did not object to her demand for a jury trial on the ground that she should have been considered a party from the date she filed her motion to intervene because she had standing to file a caveat at that time. Those objections were therefore waived. See *Hunter v. Hunter*, 289 Ga. 9, 10, n. 1 (709 SE2d 263) (2011).

In any event, Appellant points to no authority saying that a person who files a motion to intervene in a pending lawsuit is considered a formal party before the motion is granted by the court. To the contrary, we have said that after a trial court grants a motion to intervene, the intervenors "*become* parties" and "*thereafter* [are] 'for all intents and purposes,' original parties, and they could file any pleading in the case that original parties could have filed." *Woodward v. Lawson*, 225 Ga. 261, 262 (167 SE2d 660) (1969) (emphasis added). In addition, Hash's motion to intervene was not a "pleading" triggering the deadline for a jury trial demand under OCGA § 15-9-121 (a). OCGA § 9-11-7 (a) says that "[p]leadings" consist of filings such as "a complaint and answer," not "[m]otions," which are discussed in OCGA § 9-11-7 (b). And OCGA § 9-11-24 (c) provides that a motion to intervene must be *accompanied* by "a pleading setting forth the claim or defense for which intervention is sought."

Thus, Hash's motion to intervene did not constitute a "pleading," and she did not become a "party" to this case until the trial court granted her motion on February 10, 2011. Because she filed her demand for a jury trial the next day, the demand was timely.

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 29, 2012.

*Perry & Walters, George P. Donaldson III, Richard W. Fields*, for appellant.
*Kermit S. Dorough, Jr., Jesse G. Bowles III*, for appellees.