FINAL COPY
294 Ga. 514

S13A1410.  WILBROS, LLC v. THE STATE et al.

BENHAM, Justice.

Appellant Wilbros, LLC operates a solid waste, recycling, composting, and waste water processing facility in Stephens County that is subject to the requirements of the Georgia Comprehensive Solid Waste Management Act, OCGA § 12-8-20 et seq.  ("the Act"), and related regulations.  By Consent Order executed by Wilbros and the Environmental Protection Division of the Georgia Department of Natural Resources ("EPD") in November of 2012, Wilbros agreed to pay $25,000 to the Department of Natural Resources in compromise and settlement of various disputed violations referenced in the Consent Order.  These disputed violations include, among other things, alleged failure to comply with the terms of an earlier consent order as well as violation of provisions of the Act and the solid waste permit issued to Wilbros.  The Consent Order stated that the EPD representatives who visited the facility on various dates in June of 2012 noted strongly offensive offsite and onsite odors and, on one of the inspection dates, noted numerous flies in the area related to

Wilbros's composting operation.

On August 1, 2012, Wilbros was charged with violation of Stephens County ordinance § 34-73 (3) and (4).[1]  Wilbros and the state court solicitor filed a written stipulation in the case stipulating that Wilbros had been ordered by the EPD to pay a $25,000 fine for statutory violations of odor issues at the facility and that the operative dates for those violations encompassed the same dates alleged in the local ordinance violation charge.  The parties further stipulated that both the county ordinance violation charge and the EPD Consent Order allege an ongoing odor nuisance and that "each proceeding has a goal of restraining, deterring, promoting retribution and abating the odor nuisance."  Wilbros filed a plea in bar of prosecution, raising double jeopardy, a preemption challenge, and a constitutional challenge asserting the ordinance is void for

---

[1] The county ordinance defines nuisance as meaning "whatever is dangerous or detrimental to human life or health and whatever renders or tends to render soil, air, water or food impure or unwholesome."  Pursuant to § 34-73:
The following are specifically declared to be nuisances:
. . .
(3) Pollution of the air by gases, vapors, fumes, mists, dust, or smoke in quantities sufficient to be disagreeable, discomforting, or detrimental to health or well-being in relation to the conditions of the surrounding area, as determined by the health officer.
(4) Trash, garbage, refuse, or any foul, decaying or putrescent material kept in such quantities or used in such a manner or place as to be or become offensive, objectionable, or detrimental to health or well-being.

vagueness. The trial court denied Wilbros's plea, specifically concluding there is no Georgia authority that permits a corporation to assert Fifth Amendment double jeopardy protection under the Georgia or United States Constitutions, finding that the preemption argument fails, and finding that the county ordinance is constitutional. The trial court also granted Wilbros the right to pre-trial appeal pursuant to the authority of *Patterson v. State*, 248 Ga. 875 (287 SE2d 7) (1982) (denial of a constitutional double jeopardy plea is directly appealable). Wilbros filed its appeal in the Court of Appeals, which transferred the case to this Court because it raises the issue of the constitutionality of the county ordinance, an issue over which this Court has exclusive jurisdiction. See Ga. Const. of 1983, Art. VI, Sec. VI, Par. II (1). For the reasons set forth below, we affirm the trial court's denial of Wilbros's plea in bar of prosecution.

1. Both the United States Constitution[2] and the Georgia Constitution of 1983[3] include protections against double jeopardy. The issue of whether the double jeopardy provision of the Georgia Constitution extends to a corporation

---

[2] "[N]or shall any person be subject for the same offen[s]e to be twice put in jeopardy of life or limb." Fifth Amendment to the United States Constitution.

[3] "No person shall be put in jeopardy of life or liberty more than once for the same offense except when a new trial has been granted after conviction or in case of mistrial." Ga. Const. of 1983, Art. I, Sec. I, Par. XVIII.

appears to be one of first impression. The Double Jeopardy Clause of the Fifth Amendment, however, has long been applied to corporate entities. See *United States v. Martin Linen Supply Co.*, 430 U. S. 564 (II) (97 SCt 1349, 51 LE2d 642) (1977); *Fong Foo v. United States*, 369 U. S. 141 (82 SCt 671, 7 LE2d 629) (1962). Because the Double Jeopardy Clause of the Fifth Amendment applies to the various states through the Fourteenth Amendment (see *Benton v. Maryland*, 395 U. S. 784, 794 (III) (89 SCt 2056, 23 LE2d 707) (1969)), the trial court erred in finding it was not available as a potential defense in this case. In *Eckles v. Atlanta Technology Group, Inc.*, 267 Ga. 801, 803 (2) (485 SE2d 22) (1997), this Court declared that because a corporation is a "person" pursuant to Georgia law, it is entitled to due process and equal protection from the state. It follows that a corporation is entitled to the double jeopardy protection afforded by the Georgia Constitution. The trial court improperly concluded that the plea of double jeopardy was not available to Wilbros, but since it otherwise properly denied the plea in bar of prosecution, the judgment is affirmed under the right- for-any-reason rule. See *Ellis v. Johnson,* 291 Ga. 127, 132 (728 SE2d 200) (2012).

Having improperly concluded that the plea of double jeopardy was not

available to Wilbros, the trial court made no determination with respect to whether double jeopardy applies to the facts of this case. The State asserts the Consent Order was not a criminal conviction and that neither the remedial actions required by it nor the fine it imposed represents punitive action that serves as a basis for invoking double jeopardy protections. The Act authorizes both civil and criminal penalties. The prohibition against double jeopardy applies only to criminal punishments for the same offense. See *Hudson v. United States*, 522 U. S. 93, 99 (118 SCt 488, 139 LE2d 450) (1997); *Keenan v. Hardison*, 245 Ga. 599 (1) (266 SE2d 205) (1980).

> Whether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction. . . . Even in those cases where the legislature has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect as to transform what was clearly intended as a civil remedy into a criminal penalty.

(Citations and punctuation omitted.) *Hudson*, supra. In making such a

determination, the Supreme Court has offered a number of factors to be used as guideposts. See *Kennedy v. Mendoza-Martinez*, 372 U. S. 144, 168-169 (83 SCt 554, 9 LE2d 644) (1963). These include:

[(1) w]hether the sanction involves an affirmative disability or restraint, [(2)] whether it has historically been regarded as a punishment, [(3)] whether it comes into play only on a finding of scienter, [(4)] whether its operation will promote the traditional aims of punishment – retribution and deterrence, [(5)] whether the behavior to which it applies is already a crime, [(6)] whether an alternative purpose to which it may rationally be connected is assignable for it, and [(7)] whether it appears excessive in relation to the alternative purpose assigned . . . .

Id. In any event, "'only the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Hudson,* supra, 522 U. S. at 100, quoting *United States v. Ward*, 448 U. S. 242, 249 (100 SCt 2636, 65 LE2d 742) (1980).

In this case, it is evident that the money penalties and remedial actions imposed by the Consent Order are authorized by statute as civil sanctions. See OCGA § 12-8-30.6 (authorizing, among other things, a fine not to exceed $25,000 per day for each day during which a violation of the Act or failure to comply with an order issued by the director of the EPD continues). Just as the Supreme Court found in *Hudson*, in this case "there is little evidence, much less the clearest proof" suggesting that the penalties imposed by the Consent Order are so punitive as to render them criminal despite the legislative intent to the contrary. See *Hudson*, supra, 522 U. S. at 104. For example, unlike the statutory provision authorizing criminal penalties upon conviction for a knowing violation of the law, regulations, or material requirement of a permit (see OCGA § 12-8-30.8), the provision authorizing civil penalties only requires a violation of the statute without regard to the violator's state of mind, or requires intentional or negligent failure to comply with any final order issued pursuant to the Act (see OCGA § 12-8-30.6). Thus, the third factor set forth in *Kennedy* regarding whether the sanction is applicable only upon a finding of scienter is not met. Neither is the fifth factor met, since the violation punished by the Consent Order is not a crime unless it is committed knowingly and, thus, is not

7

already a crime. Monetary fines and remedial action are penalties that are recognized as enforceable by civil proceedings and are not exclusively criminal in nature. See *Hudson*, supra. The parties stipulated that deterrence and "promoting retribution"[4] are goals of both the Consent Order and the nuisance ordinance violation charge. Neither deterrence nor retribution, however, is sufficient to render a sanction criminal since both of these "may serve civil as well as criminal goals." (Citations and punctuation omitted.) Id. at 105. Consequently, the first, second, and fourth factors set forth in *Kennedy* for analyzing whether a sanction is criminal and not merely civil in nature are not met in this case. With respect to factors six and seven, the analysis turns on whether any restriction imposed is reasonably related to a legitimate governmental objective and, if so, "it does not, without more, amount to 'punishment.'" See *Bell v. Wolfish*, 441 U. S. 520, 539 (99 SCt 1861, 60 LE2d 447) (1979). In this case, the Consent Order does not impose a restraint on liberty but requires certain remedial action along with a monetary penalty, both

---

[4] We interpret "retribution" in the context of this case to mean repayment for the offense committed. See Black's Law Dictionary (9th ed. 2009). As noted in footnote 6, infra, the imposition of a monetary penalty in this case is not purely punitive but is reasonably related to governmental enforcement objectives.

of which appear to be reasonably related to the legitimate governmental objective of waste management regulation.[5] Further, the language of the Consent Order states:

> This Order is executed and entered solely for the purpose of resolving and disposing of the statements, legal conclusions, and violations alleged herein each and every one of which [Wilbros] expressly disputes and denies, and does not constitute a determination, finding or evidence of any violation by [Wilbros] of any common law or statutory law, rule, or regulation, or any other legal requirement of any nature, nor does [Wilbros] by entering into this agreement admit to any such violations . . . and expressly disputes and denies any such violations. In addition, this Order shall not be construed to create any claim, right, liability, or waiver of rights in favor of any third party or parties.

Having considered the various factors set forth in *Kennedy* as a guidepost for determining whether a civil sanction rises to the level of a criminal penalty, along with the terms of the parties' agreement, we conclude the Consent Order in this case did not amount to criminal punishment to which double jeopardy

---

[5] Since the violations appear to have been ongoing, the one-time penalty of $25,000 was significantly below the maximum civil penalty of $25,000 per day for each day during which the violation continues permitted by OCGA § 12-8-30.6. Further, we note that pursuant to subsection (d), penalties collected pursuant to this statute are paid into the solid waste trust fund which, according to OCGA § 12-8-27.1, are to be used for various emergency purposes and for administration of the solid waste management program. Thus, we conclude the penalty collected was not purely punitive but reasonably related to a legitimate governmental objective.

prohibitions apply.[6] Even though the parties stipulated that both the Consent Order and the criminal action allege the same nuisance conduct and each proceeding has the same goals of restraint, deterrence, retribution, and abatement of the odor nuisance, the criminal action is not barred by the sanctions imposed in the Consent Order.

2. Article III, Section VI, Paragraph IV (a) of the Georgia Constitution of 1983 provides:

> Laws of a general nature shall have uniform operation throughout this state and no local or special law shall be enacted in any case for which provision has been made by an existing general law, except that the General Assembly may by general law authorize local governments by local ordinance or resolution to exercise police powers which do not conflict with general laws.

Relying upon this clause, Wilbros asserts the trial court erred in rejecting its plea that the county ordinance involved in this case is preempted by the Act. We reject this assertion. OCGA § 12-8-30.9 states that no provision of the Act

---

[6] Compare *Jung Bea Han v. McDonald*, 408 Fed.Appx. 289 (11th Cir. 2011) (finding no violation of the Double Jeopardy Clause where a monetary penalty and corrective action imposed by the Florida Department of Environmental Protection for environmental violations did not involve imprisonment, no finding of scienter was required, and the appellant offered no proof that the underlying purpose of the penalty was criminal in nature or was excessive in relation to its civil purpose even though criminal charges for the same acts had been dismissed); *State v. Farricielli*, 71 Conn. App. 1 (799 A2d 1121) (2002) (finding double jeopardy protections did not bar criminal prosecution for violation of certain Connecticut environmental laws even though a court had previously imposed over $2 million in civil penalties along with remedial measures that allegedly arose from the same conduct).

10

shall be construed to be a limitation: (1) On the power of a municipality, county, authority, or special district to adopt and enforce additional regulations, not in conflict with this part, imposing further conditions, restrictions, or limitations with respect to the handling or disposal of municipal solid waste; (2) On the power of a municipality, county, authority, or special district to declare, prohibit, and abate nuisances; . . . .

The county ordinance is, by its terms, aimed at abating certain nuisances. Further, it does not set forth regulations that are in conflict with the Act. Consequently, the ordinance falls within the constitutional exception to preemption because it is expressly authorized by statute. See *Environmental Waste Reductions, Inc. v. Legal Environmental Assistance Foundation, Inc.*, 216 Ga. App. 699, 702 (2) (455 SE2d 393) (1995); compare *Old South Duck Tours v. Mayor & Aldermen of the City of Savannah,* 272 Ga. 869, 871 (1) (535 SE2d 751) (2000) (concluding a local ordinance prohibiting certain vehicles on city streets fell within the constitutional exception to the doctrine of preemption since the General Assembly enacted general laws authorizing local governments to exercise their police powers to regulate and control the use of roads).

3. The trial court did not err in rejecting Wilbros's defense that the ordinance is unconstitutionally vague and thus unenforceable.

The void for vagueness doctrine of the due process clause requires

that a challenged statute or ordinance give a person of ordinary intelligence fair warning that specific conduct is forbidden or mandated and provide sufficient specificity so as not to encourage arbitrary and discriminatory enforcement. Vagueness challenges . . . that do not implicate First Amendment freedoms must be examined in the light of the facts of the case to be decided.

*Parker v. City of Glennville*, 288 Ga. 34, 35 (1) (701 SE2d 182) (2010).

Wilbros argues that the ordinance uses vague and ambiguous terms that fail to provide clear notice and a sufficiently definite warning of the prohibited conduct. But the word "nuisance" is a statutorily defined term referring to "anything that causes hurt, inconvenience, or damage to another . . . ." OCGA § 41-1-1. The ordinance defines nuisance as "whatever is dangerous or detrimental to human life or health and whatever renders or tends to render soil, air, water or food impure or unwholesome." Stephens County Ordinance § 34-73. Wilbros is charged with violation of subsection (3) of the ordinance, which declares as a nuisance "[p]ollution of the air by gases, vapors, fumes, mists, dusts, or smoke in quantities sufficient to be disagreeable, discomforting, or detrimental to health or well-being in relation to the conditions of the surrounding area, as determined by the health officer." It is also charged with violation of subsection (4), which declares as a nuisance "[t]rash, garbage,

refuse, or any foul, decaying or putrescent material kept in such quantities or used in such a manner or place as to become offensive, objectionable, or detrimental to health or well-being." A nuisance ordinance "is not vague if it uses terms which have well established common law meanings or which are significantly explained in the context of the ordinance as a whole. . . . [T]he term 'offensive' does not render a nuisance standard unconstitutionally vague." *(Citations omitted) Stanfield v. Glynn County*, 280 Ga. 785, 789 (4) (631 SE2d 374) (2006). The test of whether an act is a nuisance is whether it would be offensive to persons of ordinary feelings and sensibilities. *Life for God's Stray Animals, Inc. v. New North Rockdale County Homeowners Assn.*, 253 Ga. 551, 553 (5) (322 SE2d 239) (1984). Thus, we reject Wilbros's assertion that the ordinance gives unfettered discretion to a health official to determine what constitutes a violation. In light of the facts to be decided, we interpret the ordinance to require the opinion of a health officer that the prohibited pollution is sufficient to be disagreeable or discomforting to a person of ordinary sensibilities or detrimental to health or well-being. We do not find this provision to be unconstitutionally vague or to grant unfettered official discretion.

13

Judgment affirmed.  All the Justices concur.


Decided February 24, 2014.

Nuisance ordinance; constitutional question. Stephens State Court. Before Judge Irvin.

McDonald & Cody, Douglas W. McDonald, Jr., for appellant.

Dan T. Pressley, Sr., for appellees.